**Fill in this information to identify your case:**

Debtor **McQuillen Place Company, LLC**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF IOWA

Case number **19-00507**
(if known)

## Official Form 410
## Proof of Claim

4/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

**First Security Bank & Trust Company**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

■ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| **First Security Bank & Trust Company**<br>**809 Clark Street**<br>**PO Box 577**<br>**Charles City, IA 50616-0507**<br>Name, Number, Street, City, State & Zip Code | **First Security Bank & Trust Company**<br>**809 Clark Street**<br>**PO Box 577**<br>**Charles City, IA 50616-0507**<br>Name, Number, Street, City, State & Zip Code |
| Contact phone **641-228-2343** | Contact phone **641-228-2343** |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

■ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____

**5. Do you know if anyone else has filed a proof of claim for this claim?**

■ No
☐ Yes. Who made the earlier filing? _____

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                     Best Case Bankruptcy

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

■ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7. How much is the claim?**

$ 4,030,746.28  **Does this amount include interest or other charges?**

☐ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Promissory note secured by real estate mortgage - see attached**

**9. Is all or part of the claim secured?**

☐ No
■ Yes. The claim is secured by a lien on property.

**Nature of property:**

■ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle
☐ Other. Describe: **See attached statement** _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 500,000.00

**Amount of claim that is secured:** $ 500,000.00

**Amount of claim that is unsecured:** $ 3,530,746.28   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) 0 %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

■ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition:** $ _____

**11. Is this claim subject to a right of setoff?**

■ No
☐ Yes. Identify the property: _____

Official Form 410 | **Proof of Claim** | page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

■ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.    $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:**      **Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

■ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    **July  2, 2019**
                    MM/ DD / YYYY

**/s/ /s/ Larry S. Eide**
    Signature

**Print the name of the person who is completing and signing this claim:**

Name    **/s/ Larry S. Eide**

Title    **Attorney**

Company    **Pappajohn, Shriver, Eide & Nielsen P.C.**
         Identify the corporate servicer as the company if the authorized agent is a servicer.
         **Attn: Larry S. Eide**
         **PO Box 1588**
Address    **Mason City, IA 50402-1588**
         Number, Street, City, State and Zip Code

Contact phone    **641-423-4264**    Email    **eide@pappajohnlaw.com**

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**STATEMENT ATTACHED**
**TO**
**PROOF OF CLAIM**
**McQUILLEN PLACE COMPANY, LLC**
**CASE NO. 19-00507**

First Security Bank & Trust Company ("Claimant") files this proof of claim. The claim is based upon a promissory note dated December 31, 2014, executed by the Debtor and originally given to Cedar Rapids Bank & Trust Company ("CRBT"). The promissory note was subsequently assigned to Claimant by CRBT.

The promissory note is primarily secured by a mortgage against real estate locally known as 107 - 109 and 123 Main Street, Charles City, Floyd County, Iowa, and which is legally described, to wit:

LOT ONE (1), BLOCK TWENTY ONE (21), EXCEPT THE NORTHWESTERLY TWENTY TWO FEET (NWLY 22') THEREOF, OF THE ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, OTHERWISE DESCRIBED AS: LOT ONE (1) OF THE IRREGULAR SURVEY OF BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES. NOW A PART OF CHARLES CITY, IOWA, EXCEPT THE NORTHWESTERLY TWENTY TWO FEET (NWLY 22') THEREOF;

AND

THE NORTH ONE HALF (N ½) OF THE WEST FORTY FEET (W 40') OF THE BRICK WALL BETWEEN LOTS ONE (1) AND TWO (2), BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY, IOWA;

AND

CHARLES CITY DISASTER REDEVELOPMENT PROJECT IOWA R 36(C) PARCEL NO. R 24 (P 10), MORE PARTICULARLY DESCRIBED AS: THE NORTHWESTERLY 22.00 FEET OF LOT ONE (1), BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS THE CITY OF CHARLES CITY, FLOYD COUNTY, IOWA.

(LOCALLY DESCRIBED AS 123 N. MAIN STREET, CHARLES CITY, IOWA 50616 PARCEL NO. 110146700500)

AND

LOT TWO (2), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY, IOWA.

LOT THREE OF THE IRREGULAR SURVEY OF BLOCK TWENTY-ONE OF THE ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS CHARLES CITY.

LOT 4 OF THE SUB-DIVISION OF LOTS 3 AND 4 OF BLOCK 21 OF THE ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS CHARLES CITY, IOWA.

LOT FIVE (5) OF THE IRREGULAR SURVEY OF BLOCK NO. TWENTY-ONE (21) OF THE ORIGINAL PLAT OF ST. CHARLES (NOW INCORPORATED AS CHARLES CITY) ACCORDING TO THE SUB-DIVISION OF SAID BLOCK TWENTY-ONE (21).

Prior to the commencement of this case, Claimant filed a mortgage foreclosure action against the Debtor seeking to foreclose the mortgage. A copy of the mortgage foreclosure petition and all attachments are attached hereto. Also attached is a copy of the Assignment and Assumption Agreement whereby CRBT assigned the promissory note and all security documents to Claimant.

Claimant is not certain of the value of the above-described real estate. The Debtor has valued the real estate at $500,000.00 in Schedule A/B. Claimant believes that the real estate may have a greater value but Claimant adopts the Debtor's value for the purposes of this proof of claim. At such time as Claimant has better knowledge of the value of the above-described real estate, Clamant will file an amended proof of claim.

The above-described real estate is subject to unpaid real estate taxes that were delinquent at the commencement of the case in the aggregate amount of $225,282.00. The installment of real estate taxes that became delinquent on October 1, 2018, was unpaid in the amount of $106,265.00 plus penalty through April 2019 in the amount $11,158.00 (aggregating $117,423.00). The installment of real estate taxes that became delinquent on April 1, 2019, was unpaid in the amount of $106,265.00 plus penalty through April 2019 in the amount $1,594.00 (aggregating $107,859.00).

The amount due Claimant is calculated as follows:

| Promissory note principal balance | $3,646,790.49 |
|---|---|
| Real estate tax advance on 6/12/2018 | 236,446.00 |
| Interest on promissory note balance to 4/25/2019 | 138,528.08 |
| Interest on real estate tax advance to 4/25/2019 | 8,981.71 |
| **Total balance due as of 4/25/19** | **$4,030,746.28** |

- 2 -

The Claimant received a payment in the amount of $900,000.00 from guarantor Robert Thomson on December 28, 2018. This payment was applied as follows:

| | |
|---|---|
| Interest due as of December 28, 2018 | $281,610.03 |
| Accrued late charges as of commencement of foreclosure action and unpaid as of December 28, 2018 | 385,188.33 |
| Principal | 233,201.64 |
| Total payment received | $900,000.00 |

In addition to the foregoing sum, Claimant is entitled to attorney's fees which have not yet been determined.

The principal owner of the Debtor, Charles Thomson, has personally guaranteed the promissory note. The promissory note is also secured by mortgages against real estate owned by Charles Thomson, Amelia Management, LLC, Umbrella Realty, LLC and Janan M. Thomson Family Trust. Since these parcels of real estate are not owned by the Debtor, no value is assigned to them in this proof of claim.

- 3 -

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Agreement") is made this 5th day of July, 2018, by and between CEDAR RAPIDS BANK AND TRUST COMPANY ("CRBT") and FIRST SECURITY BANK AND TRUST COMPANY ("FSB").

Pursuant to the Settlement Agreement and Mutual Release dated July 5, 2018, CRBT hereby assigns to FSB, and FSB hereby accepts from CRBT and assumes all of CRBT's obligations under the following Loan Documents and Foreclosure Action effective as of the date of this Agreement:

## I.      McQuillen Place Company, LLC Loan Documents

1. Promissory Note for $3,880,000 dated December 31, 2014.
2. Change in Terms Agreements dated June 30, 2016, December 1, 2016, March 31, 2017 and June 30, 2017.
3. Construction Mortgage dated December 31, 2014, recorded on January 5, 2015 as Instrument Number 2015 0014 in the office of the Floyd County, Iowa Recorder.
4. Construction Loan Agreement dated December 31, 2014.
5. Commercial Guaranty of Charles M. Thomson (unlimited) dated December 31, 2014, along with the following to secure the Guaranty:

    a.      Mortgage of $240,000 dated December 31, 2014, recorded on January 8, 2015 as Instrument Number 2015 0044 on property at 501 Spriggs Street, Charles City, Iowa;

    b.      Assignment of Life Insurance Policy as Collateral dated October 17, 2014; Farm Bureau Policy No. 040-001543324 in the amount of $2,000,000.00 on Charles M. Thomson; and

    c.      Assignment of Life Insurance Policy as Collateral dated December 31, 2014; Mutual of Omaha Policy No. BU1123372 in the amount of $125,000.00 on Robert Thomson- limited to Charles M. Thomson's portion of the $125,000;

6. Commercial Guaranty of Amelia Trust (unlimited) dated December 31, 2014.
7. Commercial Guaranty of Amelia Management, LLC (unlimited) dated December 31, 2014, along with the following to secure the Guaranty:

    a.      Mortgage of $135,000 dated December 31, 2014, recorded on January 9, 2015 as Instrument Number 2015 0048 on property at 206 N. Main Street, Charles City, Iowa;

    b.      Mortgage of $125,000 dated December 31, 2014, recorded on January 9, 2015 as Instrument Number 2015 0047 on property at 208 N. Main Street, Charles City, Iowa;

{02465565.DOC}

  c. Mortgage of $115,000 dated December 31, 2014, recorded on January 9, 2015 as Instrument Number 2015 0049 on property at 505 Kellogg Avenue, Charles City, Iowa;

  d. Mortgage of $95,000 dated December 31, 2014, recorded on January 8, 2015 as Instrument Number 2015 0045 on property at 2652 Harvey Street, Charles City, Iowa;

  e. Mortgage of $250,000 dated December 31, 2014, recorded on January 9, 2015 as Instrument Number 2015 0050 on property at 1110 N. Grand Avenue, Charles City, Iowa; and

  f. Mortgage of $40,000 dated December 31, 2014, recorded on January 8, 2015 as Instrument Number 2015 0046 on property at 704 Cedar Street, Charles City, Iowa.

8. Commercial Guaranty of Robert L. Thomson (Limited to $900,000) dated December 31, 2014.

9. Mortgage of $150,000 from Janan M. Thomson Family Trust dated December 31, 2014, recorded on January 14, 2015 as Instrument Number 201500000498 on an undivided 1/8 interest in the "Walsh Farm" in Dubuque County, Iowa, containing 200 acres more or less.

10. Assignment of Contracts, Agreements, Licenses and Permits dated December 31, 2014.

11. Trust Certificate from Amelia Trust dated December 31, 2014, along with copy of April 20, 2012 Amelia Trust Declaration and Agreement.

12. Certificate of Amelia Trust as Member of McQuillen Place Company, LLC dated December 31, 2014.

13. Limited Liability Company Resolution to Grant Collateral/Guarantee from Amelia Management, LLC dated December 31, 2014.

14. Notices of Final Agreement dated December 31, 2014, June 30, 2016, December 1, 2016, March 31, 2017 and June 30, 2018.

15. Copy of Petition for Appointment of Co-Trustees of Trust established under the Last Will and Testament of Janan M. Thomson, along with copy of Will and Order Appointing Co-Trustees.


## II. Foreclosure Action

1. All of CRBT's right, title, and interest, in and to the legal action seeking foreclosure of the Promissory Note and Construction Mortgage referenced above, commenced by the filing on March 14, 2018 of a Petition in Equity to Foreclose Mortgage Without Redemption that is currently pending in the Iowa District Court for Floyd County under case number EQCV 031170, including but not limited to all claims, causes of actions, rights of relief and other remedies asserted or requested therein as well as all claims, causes of actions, rights of relief and other remedies related to or which could

{02465565.DOC}

be premised on facts alleged in or on facts which otherwise relate to the substance of such litigation;

The parties acknowledge that this assumption is limited by the provisions of Paragraph 5 of the Settlement Agreement (i.e. that FSB shall have no obligation to indemnify CRBT for any claims made against CRBT by anyone else with respect to the Loan and/or the Foreclosure Action).

CEDAR RAPIDS BANK AND TRUST COMPANY

By: _Patricia L. Ellison_
Patricia L. Ellison, EVP/CCO

FIRST SECURITY BANK AND TRUST COMPANY

By: _____
Kurt Herbrechtsmeyer, President

{02465565.DOC}

E-FILED  2018 AUG 27 8:01 AM FLOYD - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR FLOYD COUNTY

| | | |
|---|---|---|
| CEDAR RAPIDS BANK AND TRUST COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.   EQCV 031170 |
| v. | ) ) | |
| MCQUILLEN PLACE COMPANY, LLC, CHARLES M. THOMSON, ROBERT L. THOMSON, AMELIA MANAGEMENT, LLC, AMELIA TRUST, CERRO GORDO COUNTY, IOWA, and SCHINDLER ELEVATOR CORPORATION, | ) ) ) ) ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION TO SUBSTITUTE PARTY PLAINTIFF |
| Defendants. | ) | |

Plaintiff's Motion to Substitute Party Plaintiff came before the undersigned for consideration.  No party resists.  Having reviewed the Motion and the Court file, and being apprised in the particulars, the Court FINDS and CONCLUDES that the Motion should be, and it is hereby, GRANTED for the reasons set forth therein.

IT IS THEREFORE ORDERED that First Security Bank and Trust Company is hereby substituted as Plaintiff in this matter.

Captions on filings made after this order shall show First Security Bank and Trust Company as the Plaintiff.

{02465550.DOCX}

E-FILED 2018 AUG 27 8:01 AM ELOYD - CLERK OF DISTRICT COURT



State of Iowa Courts

**Type:**               OTHER ORDER

| **Case Number** | **Case Title** |
| --- | --- |
| EQCV031170 | (CDW)CEDAR RAPIDS BANK AND TRUST VS MCQUILLEN PLACE ET AL |

So Ordered

Colleen Weiland, District Court Judge,
Second Judicial District of Iowa

Electronically signed on 2018-08-27 08:01:45    page 2 of 2

E-FILED 2018 MAY 04 11:52 AM FLOYD - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR FLOYD COUNTY

| | | |
|---|---|---|
| CEDAR RAPIDS BANK AND TRUST COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.   EQCV 031170 |
| v. | ) ) | Amended and Substituted |
| MCQUILLEN PLACE COMPANY, LLC, CHARLES M. THOMSON, ROBERT L. THOMSON, AMELIA MANAGEMENT, LLC, AMELIA TRUST, CERRO GORDO COUNTY, IOWA, and SCHINDLER ELEVATOR CORPORATION, | ) ) ) ) ) ) ) | **PETITION TO FORECLOSE MORTGAGE WITHOUT REDEMPTION** |
| Defendants. | ) | |

## NOTICE

**THE PLAINTIFF HAS ELECTED FORECLOSURE WITHOUT REDEMPTION. THIS MEANS THAT THE SALE OF THE MORTGAGED PROPERTY WILL OCCUR PROMPTLY AFTER ENTRY OF JUDGMENT UNLESS YOU FILE WITH THE COURT A WRITTEN DEMAND TO DELAY THE SALE. IF YOU FILE A WRITTEN DEMAND, THE SALE WILL BE DELAYED UNTIL TWELVE MONTHS (or SIX MONTHS if the petition includes a waiver of deficiency judgment) FROM ENTRY OF JUDGMENT IF THE MORTGAGED PROPERTY IS YOUR RESIDENCE AND IS A ONE-FAMILY OR TWO-FAMILY DWELLING OR UNTIL TWO MONTHS FROM ENTRY OF JUDGMENT IF THE MORTGAGED PROPERTY IS NOT YOUR RESIDENCE OR IS YOUR RESIDENCE BUT NOT A ONE-FAMILY OR TWO-FAMILY DWELLING. YOU WILL HAVE NO RIGHT OF REDEMPTION AFTER THE SALE. THE PURCHASER AT THE SALE WILL BE ENTITLED TO IMMEDIATE POSSESSION OF THE MORTGAGED PROPERTY. YOU MAY PURCHASE AT THE SALE.**

**IF YOU DO NOT FILE A WRITTEN DEMAND TO DELAY THE SALE AND IF THE MORTGAGED PROPERTY IS YOUR RESIDENCE AND IS A ONE-FAMILY OR TWO-FAMILY DWELLING, THEN A DEFICIENCY JUDGMENT WILL NOT BE ENTERED AGAINST YOU. IF YOU DO FILE A WRITTEN DEMAND TO DELAY THE SALE, THEN A DEFICIENCY JUDGMENT MAY BE ENTERED AGAINST YOU IF THE PROCEEDS FROM THE SALE OF THE MORTGAGED PROPERTY ARE INSUFFICIENT TO SATISFY THE AMOUNT OF THE MORTGAGE DEBT AND COSTS.**

**IF THE MORTGAGED PROPERTY IS NOT YOUR RESIDENCE OR IS NOT A ONE-FAMILY OR TWO-FAMILY DWELLING, THEN A DEFICIENCY JUDGMENT**

{02434664.DOC}

1

E-FILED  2018 MAY 01 11:53 AM FLOYD - CLERK OF DISTRICT COURT

**MAY BE ENTERED AGAINST YOU WHETHER OR NOT YOU FILE A WRITTEN DEMAND TO DELAY THE SALE.**

Plaintiff, Cedar Rapids Bank and Trust Company (hereinafter "CRBT"), for its cause of action against Defendants, respectfully states:

1.    CRBT is a state bank organized and existing under the laws of the State of Iowa, with its principal place of business in Cedar Rapids, Linn County, Iowa.

2.    Defendant, McQuillen Place Company, LLC ("McQuillen") is an Iowa limited liability company with its principal place of business in Charles City, Floyd County, Iowa.

3.    Defendant, Charles M. Thomson is an individual resident of Charles City, Floyd County, Iowa.

4.    Defendant, Robert L. Thomson is an individual resident of Charles City, Floyd County, Iowa.

5.    Defendant, Amelia Management, LLC ("Amelia Management"), is an Iowa limited liability company with its principal place of business in Charles City, Floyd County, Iowa.

6.    Defendant, Amelia Trust, is a trust organized and existing under the laws of the State of Iowa, and pursuant to the Amelia Trust Declaration and Agreement dated April 20, 2012.  Charles M. Thomson serves as the Trustee of the Amelia Trust.

7.    McQuillen is the record titleholder of the following described real property situated in Floyd County, Iowa, to wit:

**LOTS ONE, TWO, THREE, FOUR AND FIVE (1, 2, 3, 4 AND 5) OF THE IRREGULAR SURVEY OF BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED IN AND AS A PART**

E-FILED  2018 MAY 04 11:53 AM FLOYD - CLERK OF DISTRICT COURT

**OF CHARLES CITY, IOWA** (also known as McQuillen Place Condominiums, or Condominium Unit A and Condominium Unit B of McQuillen Place Condominiums, hereinafter "McQuillen Property").

8.      Upon information and belief, Defendant Schindler Elevator Corporation is a Delaware corporation with its principal place of business in Morristown, New Jersey.

9.      On or about December 31, 2014, McQuillen executed and delivered a Promissory Note to CRBT ("Note"), in the original principal sum of Three Million Eight Hundred Eighty Thousand and No/100 Dollars ($3,880,000.00), bearing interest at the initial variable rate of 5.25% per annum, and originally payable at maturity on June 30, 2016.  A true and correct copy of Note 1 is attached hereto as "Exhibit 1" and is incorporated by reference as though fully set forth herein.

10.      The Note was amended by Change in Terms Agreements dated June 30, 2016, December 1, 2016, March 31, 2017 and June 30, 2017, respectively (collectively "Amendments").  Under the terms of the Amendments the Note currently bears interest at the variable rate of 6.75% per annum, and matured on December 15, 2017.  Copies of the Amendments are attached hereto as "Exhibit 2."

11.      To secure the indebtedness evidenced by the Note, McQuillen, on December 31, 2014, executed and delivered a Construction Mortgage ("Mortgage") to CRBT, which was filed on January 5, 2015, in Book 2015 at Page 0014 of the records of the Floyd County, Iowa Recorder.  The Mortgage mortgages and conveys the McQuillen Property in favor of CRBT as security for the Note and the indebtedness evidenced thereby.  A true and correct copy of the Mortgage is attached hereto as "Exhibit 3" and incorporated by reference as though fully set forth herein.

12.     To further secure the indebtedness evidenced by the Note, Charles M.
Thomson executed and delivered to CRBT an unlimited Commercial Guaranty dated December
31, 2014 ("Charles Thomson Guaranty"), by the terms of which he personally guaranteed all of
McQuillen's obligations under the Note and Mortgage.  A true and correct copy of the Charles
Thomson Guaranty is attached hereto as "Exhibit 4" and incorporated by reference as though
fully set forth herein.

13.     To further secure the indebtedness evidenced by the Note, the Amelia
Trust executed and delivered to CRBT an unlimited Commercial Guaranty dated December 31,
2014 ("Amelia Trust Guaranty"), by the terms of which the Amelia Trust guaranteed all of
McQuillen's obligations under the Note and Mortgage.  A true and correct copy of the Amelia
Trust Guaranty is attached hereto as "Exhibit 5" and incorporated by reference as though fully
set forth herein.

14.     To further secure the indebtedness evidenced by the Note, Amelia
Management executed and delivered to CRBT an unlimited Commercial Guaranty dated
December 31, 2014 ("Amelia Management Guaranty"), by the terms of which Amelia
Management guaranteed all of McQuillen's obligations under the Note and Mortgage.  A true
and correct copy of the Amelia Management Guaranty is attached hereto as "Exhibit 6" and
incorporated by reference as though fully set forth herein.

15.     To further secure the indebtedness evidenced by the Note, Robert L.
Thomson executed and delivered to CRBT a limited Commercial Guaranty dated December 31,
2014 ("Robert Thomson Guaranty"), by the terms of which he personally guaranteed
$900,000.00 of McQuillen's obligations under the Note and Mortgage.  A true and correct copy

E-FILED  2018 MAY 01 11:53 AM FLOYD - CLERK OF DISTRICT COURT

of the Robert Thomson Guaranty is attached hereto as "Exhibit 7" and incorporated by reference as though fully set forth herein.

16.     The Note and Mortgage provide that if any payment is not made on the date it is due, the Note will be in default.

17.     The Note matured according to its terms on December 15, 2017, and McQuillen has failed to pay the balance owed under the Note.  CRBT gave McQuillen, Robert L. Thomson, Charles M. Thomson, Amelia Trust and Amelia Management a Notice of Default, true and correct copies of which are attached hereto as "Exhibit 8" and incorporated by reference as if fully set forth herein.

18.     The default under the Note and Mortgage has not been cured and the indebtedness under the terms of the Note and the Mortgage has not been paid to CRBT.

19.     CRBT is the owner and holder of the Note and Mortgage, and as of March 12, 2018, there is due and payable to CRBT the principal balance of $3,879,992.13, plus accrued interest in the amount of $99,128.41, late charges of $385,188.33, plus accruing interest on the principal balance at the rate of 11.75% per annum from March 12, 2018 forward.

20.     The Mortgage provides that McQuillen is obligated to pay all real estate taxes, special assessments, and fire and hazard insurance premiums with respect to the McQuillen Property.  CRBT has been forced to advance or may advance payments for real estate taxes and insurance premiums, and is entitled to recover the same with interest at the rate of 11.75% per annum.

E-FILED  2018 MAY 01 11:52 AM FLOYD - CLERK OF DISTRICT COURT

21.    CRBT has paid or may pay for lien searches or continuations of the abstract of title, and is entitled under the terms of the Mortgage to recover the same with interest at the rate of 11.75% per annum.

22.    The Note and Mortgage provide that in the event of default, suit, and foreclosure, the holder's attorney's fees and other expenses of litigation, shall be paid by McQuillen.  CRBT's attorneys are filing an affidavit for such fees, as is required by statute, contemporaneously with the filing of this Petition.  CRBT asks for such attorney's fees as it may recover under the Note and Mortgage and applicable statutes.

23.    The Note provides that upon default, the interest rate increases by 5% per annum.  CRBT is entitled to interest on its judgment at the contract rate of 11.75% per annum. *See* Iowa Code §§ 535.2(1), 668.13(2).

24.    CRBT is the owner and holder of the Note and Mortgage.

25.    CRBT does **not** waive its right to a deficiency judgment, but requests foreclosure of the Mortgage without redemption pursuant to Iowa Code sections 654.20 through 654.26.  The Property is not the residence of McQuillen, Amelia Trust, Amelia Management, Charles M. Thomson or Robert L. Thomson, and is not a one-family or two-family dwelling.

26.    CRBT is credibly informed and believes that Cerro Gordo County, Iowa claims to have some lien, claim, right, title or interest in the McQuillen Property by virtue of a Forgivable Mortgage dated July 5, 2013 and filed on January 15, 2015 in Book 2015 at Page 0100 of the records of the Floyd County, Iowa Recorder.  CRBT believes, and therefore alleges, that any interest that Cerro Gordo County, Iowa may have under such Mortgage is junior and inferior to CRBT's Mortgage, and that CRBT's Mortgage creates a lien, claim and interest in the

E-FILED  2018 MAY 04 11:53 AM FLOYD - CLERK OF DISTRICT COURT

McQuillen Property that is superior to any of the asserted claims and interests of Cerro Gordo

County, Iowa and the other Defendants, or anyone claiming by, through or under any of the

Defendants.

27.    CRBT is credibly informed and believes that Schindler Elevator

Corporation claims or may claim to have some lien, claim, right, title or interest in the

McQuillen Property by virtue of a Mechanic's Lien in the amount of $53,829.00, filed on

December 22, 2017, as MNLR #014429-0 with the Iowa Secretary of State's Mechanic's Notice

and Lien Registry.  CRBT believes, and therefore alleges, that any interest that Schindler

Elevator Corporation may have under such Mechanic's Lien is junior and inferior to CRBT's

Mortgage, and that CRBT's Mortgage creates a lien, claim and interest in the McQuillen

Property that is superior to any of the asserted claims and interests of Schindler Elevator

Corporation and the other Defendants, or anyone claiming by, through or under any of the

Defendants.

WHEREFORE, Plaintiff Cedar Rapids Bank and Trust Company prays for

judgment in personam against Defendants, McQuillen Place Company, LLC, Charles M.

Thomson, Robert L. Thomson, Amelia Management, LLC and Amelia Trust, jointly and

severally, ***provided*** that the personal judgment against Defendant Robert L. Thomson shall not

exceed the sum of $900,000.00, and for judgment in rem against the McQuillen Property and all

of the Defendants, with said judgment being for the principal amount of $3,879,992.13, plus

accrued interest in the amount of $99,128.41, late charges of $385,188.33, plus accruing interest

on the principal balance at the rate of 11.75% per annum from March 12, 2018 forward, plus the

costs and expenses incurred in enforcing the Note and Mortgage including the costs of this action

and reasonable attorney's fees for Plaintiff's attorneys, plus any real estate taxes, special

assessments, and fire and hazard insurance premiums and abstracting fees advanced or incurred

by Plaintiff; and for interest on said judgment at the rate of 11.75% per annum from the date of

filing the Petition herein.

Plaintiff further prays for judgment and decree

(a)     establishing Plaintiff's Mortgage as superior to all other liens upon the
        McQuillen Property;

(b)     foreclosing Plaintiff's Mortgage for the full amount of the aforesaid
        judgment, interest and costs;

(c)     establishing that Plaintiff's first and superior lien in the McQuillen
        Property dates from the date of execution of said Mortgage; and

(d)     foreclosing Plaintiff's Mortgage against the Defendants.

Plaintiff further prays

(a)     that the Court find that Plaintiff is entitled to foreclosure without
        redemption as provided in Iowa Code section 654.20 through 654.26;

(b)     that the judgment decree forever bar and stop each and every Defendant
        from having or asserting any right, title, lien, interest or claim in or to the
        McQuillen Property;

(c)     that a Special Execution issue from this Court directing the sale of said
        McQuillen Property or so much thereof as may be necessary to satisfy said
        judgment, interests, expenses, and costs; and

d)      that a Sheriff's Deed should issue conveying the absolute title to the
        McQuillen Property against Defendants, and all persons claiming by,
        through, or under them with a Writ of Possession then issuing forthwith to
        put the Grantee of said Sheriff's Deed in immediate possession of the
        McQuillen Property.

Cedar Rapids Bank and Trust Company further prays for general execution to

issue against the Defendants, McQuillen Place Company, LLC, Charles M. Thomson, Robert L.

{02434664.DOC}                                   8

E-FILED 2018 MAY 01 11:52 AM FLOYD - CLERK OF DISTRICT COURT

Thomson, Amelia Management, LLC and Amelia Trust, jointly and severally, (*__provided__* that

such execution against Defendant Robert L. Thomson shall not exceed the sum of $900,000.00),

if the McQuillen Property is insufficient or unavailable to satisfy the judgment and costs; and for

all other and further relief the Court deems just and equitable.

Cedar Rapids Bank and Trust Company further prays for all other and further

relief the Court deems just and equitable.

/s/ Joseph E. Schmall
Joseph E. Schmall (AT0007023)
BRADLEY & RILEY PC
2007 First Avenue SE
PO Box 2804
Cedar Rapids, IA 52406-2804
Phone:  (319) 363-0101
Fax:  (319) 363-9824
Email: jschmall@bradleyriley.com

*ATTORNEY FOR CEDAR RAPIDS BANK AND
TRUST COMPANY*

{02434664.DOC}

9



**CEDAR RAPIDS BANK & TRUST**

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,880,000.00 | 12-31-2014 | 06-30-2016 | | | | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | MCQUILLEN PLACE COMPANY, LLC<br>1110 N GRAND AVE STE 300<br>CHARLES CITY, IA 50616 | Lender: | CEDAR RAPIDS BANK AND TRUST COMPANY<br>500 1ST AVENUE NE STE 100<br>CEDAR RAPIDS, IA 52401 |
|---|---|---|---|

**Principal Amount: $3,880,000.00**                                        **Date of Note: December 31, 2014**

**PROMISE TO PAY.** MCQUILLEN PLACE COMPANY, LLC ("Borrower") promises to pay to CEDAR RAPIDS BANK AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Eight Hundred Eighty Thousand & 00/100 Dollars ($3,880,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 30, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 31, 2015, with all subsequent interest payments to be due on the last day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this Note be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Cedar Rapids Bank and Trust Company, 500 1st Avenue NE Ste 100, P.O. Box 789 Cedar Rapids, IA 52406-0789.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate

**PROMISSORY NOTE**
(Continued)

Loan No: ▇▇▇▇▇▇▇                                                                                        Page 2

---

reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Iowa.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by Real Estate Mortgage dated 12/31/2014 for property located at 123; and 107-109 North Main Street, Charles City, Iowa

Real Estate Mortgage dated 12/31/2014 for farm land located in Dubuque County, Iowa, granted by the Janan M. Thomson Family Trust

Guaranty dated 12/31/2014 from Charles M. Thomson, secured by, Real Estate Mortgage dated 12/31/2014 for property located at 501 Spriggs Street, Charles City, Iowa and Assignment of Life Insurance Policy #040-001543324 from Farm Bureau Life Insurance Company dated 10/17/2014.

Guaranty dated 12/31/2014 from Amelia Management, LLC, secured by, Real Estate Mortgage dated 12/31/2014 for the following properties:
704 Cedar Street, Charles City, Iowa
206 N Main Street, Charles City, Iowa
208 N Manin Street, Charles City, Iowa
505 Kellogg Avenue, Charles City, Iowa
2652 Harvey Street, Charles City, Iowa
1110 N Grand Avenue, Charles City, Iowa

Guaranty dated 12/31/2014 from Robert L. Thomson.

Guaranty dated 12/31/2014 from Amelia Trust

Assignment of Charles Thomson's one-quarter interest of Life Insurance Policy #BU112337 from United of Omaha Life Insurance Company, upon the life of Robert Thomson, dated 12/31/2014.

Construction Loan Agreement dated 12/31/2014

Assigment of Contracts, Ageements, Licenses and Permits dated 12/31/2014

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**PURPOSE OF LOAN.** The purpose of this loan is for: Purchase and rehabilitate property located in Charles City, Iowa.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Cedar Rapids Bank and Trust Company 500 1st Avenue NE Ste 100, P.O. Box 789 Cedar Rapids, IA 52406-0789.

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

```
** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

TIME RECEIVED                    REMOTE CSID        DURATION    PAGES    STATUS
December 31, 2014 10:23:57 AM CST                   41          1        Received
```

| Loan No: ▮▮▮▮▮▮ | **PROMISSORY NOTE**<br>**(Continued)** | Page 3 |
|---|---|---|

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

**BORROWER:**

MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Member of MCQUILLEN
PLACE COMPANY, LLC

AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Trustee of AMELA TRUST

**LENDER:**

CEDAR RAPIDS BANK AND TRUST COMPANY

X _____
Gary M Becker, Senior Vice President

LaserPro, Ver. 14.4.1.036 Copr. D+H USA Corporation 1997, 2014. All Rights Reserved. - IA W:\CFI\LPL\D20.FC TR-8887 PR-5



CEDAR RAPIDS BANK & TRUST

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,880,000.00 | 06-30-2016 | 12-01-2016 | [redacted] | | | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA 50616

**Lender:** CEDAR RAPIDS BANK AND TRUST COMPANY
500 1ST AVENUE NE STE 100
CEDAR RAPIDS, IA 52401

**Principal Amount: $3,880,000.00** **Date of Agreement: June 30, 2016**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated 12/31/14 in the original amount of $3,880,000.00 with an original maturity date of 06/30/16 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date, extend payment schedule.

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 1, 2016. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 31, 2016, with all subsequent interest payments to be due on the last day of each month after that.**

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.500% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.**

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**PURPOSE OF LOAN.** The purpose of this loan is for: Original purpose was to Purchase and rehabilitate property at 123 North Main Street, Charles City, IA

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**Loan No:** ▉▉▉▉▉▉

## CHANGE IN TERMS AGREEMENT
### (Continued)

Page 2

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CHANGE IN TERMS AGREEMENT AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

BORROWER:

MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Member of MCQUILLEN
PLACE COMPANY, LLC

AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Trustee of AMELIA TRUST

LENDER:

CEDAR RAPIDS BANK AND TRUST COMPANY

X _____
Gary M Becker, Senior Vice President

LaserPro, Ver. 16.1.10.003 Copr. D+H USA Corporation 1997, 2016 All Rights Reserved. - IA E:\Apps\LaserPro\CFI\TC\FIN\PL\D20C.FC TR-12292 PR-8



**CEDAR RAPIDS BANK & TRUST**

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,472,136.45 | 12-01-2016 | 03-31-2017 | | | | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:**   MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA  50616

**Lender:**   CEDAR RAPIDS BANK AND TRUST COMPANY
500 1ST AVENUE NE STE 100
CEDAR RAPIDS, IA  52401

**Principal Amount: $3,472,136.45**                     **Date of Agreement:  December 1, 2016**

DESCRIPTION OF EXISTING INDEBTEDNESS. Promissory Note dated 12/31/2014 in the original amount of $3,880,000.00 with an original maturity date of 6/30/2016 and all amendments thereafter.

DESCRIPTION OF CHANGE IN TERMS. Extend the maturity date, extend the interest rate and extend the payment schedule.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 31, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 31, 2016, with all subsequent interest payments to be due on the last day of each month after that.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal  (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.500% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

COUNTERPART. This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

PURPOSE OF LOAN. The purpose of this loan is for: Original purpose was to purchase and rehabilitate property at 123 N Main St, Charles City, IA.

## CHANGE IN TERMS AGREEMENT
### (Continued)

| Loan No: ████████ | | Page 2 |
| --- | --- | --- |

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CHANGE IN TERMS AGREEMENT AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

BORROWER:

MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Member of MCQUILLEN
PLACE COMPANY, LLC

AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Trustee of AMELIA TRUST

LENDER:

CEDAR RAPIDS BANK AND TRUST COMPANY

X _____
Gary M Becker, Senior Vice President

LaserPro, Ver. 16.3.10.003 Copr. D+H USA Corporation 1997, 2016. All Rights Reserved. - IA E:\AppsLaserPro\CR\TFCP\PL\D20C.FC TR-12900 PR-9

Exhibit 2



**CEDAR
RAPIDS
BANK &
TRUST**

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,880,000.00 | 03-31-2017 | 06-30-2017 | | | MCQUILPC00 | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * * " has been omitted due to text length limitations.

**Borrower:** MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE #300
CHARLES CITY, IA  50616-2139

**Lender:** Cedar Rapids Bank and Trust Company
500 1st Avenue NE Suite 100
Cedar Rapids, IA  52401

**Principal Amount: $3,880,000.00**  **Date of Agreement: March 31, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated 12/31/2014 in the amount of $3,880,000.00 with an original maturity date of 06/30/2016 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extending the maturity date and payment schedule. Rate will remain at Prime + 1.00% with a 5.250% floor.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on June 30, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 30, 2017, with all subsequent interest payments to be due on the last day of each month after that.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal as published in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.000% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.250% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.250% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**NOTE COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**PURPOSE OF LOAN.** The purpose of this loan is for: Original purpose was to purchase and rehabilitate property at 123 N Main St, Charles City, IA.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

## CHANGE IN TERMS AGREEMENT
### (Continued)

| Loan No: ▮▮▮▮▮▮ | | Page 2 |
|---|---|---|

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CHANGE IN TERMS AGREEMENT AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

BORROWER:

MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Member of MCQUILLEN
PLACE COMPANY, LLC

AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____
CHARLES M THOMSON, Trustee of AMELIA TRUST

LENDER:

CEDAR RAPIDS BANK AND TRUST COMPANY

x _____
Gary M Becker, Senior Vice President

LaserPro, Ver. 16.4.0.017  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - IA  E:\Apps\LaserPro\OCR\14CFR\LPL\D20C.FC  TR-777  PR-9

Exhibit 2



CEDAR RAPIDS BANK & TRUST

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,879,992.13 | 06-30-2017 | 12-15-2017 | [redacted] | | MCQUILPC00 | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE #300
CHARLES CITY, IA 50616-2139

**Lender:** Cedar Rapids Bank and Trust Company
500 1st Avenue NE Suite 100
Cedar Rapids, IA 52401

**Principal Amount: $3,879,992.13** **Date of Agreement: June 30, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated 12/31/2014 in the amount of $3,880,000.00 with an original maturity date of 6/30/2016 and all amendments thereafter.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date, extend the payment schedule and increase the interest rate from Prime + 1.000% to Prime + 2.500% with the floor changing from 5.250% to 5.750%.

**PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 15, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning July 30, 2017, with all subsequent interest payments to be due on the same day of each month after that.**

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 4.250% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.750% per annum based on a year of 360 days. NOTICE: Under no circumstances will the interest rate on this loan be less than 5.750% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.**

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**NOTE COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**PURPOSE OF LOAN.** The purpose of this loan is for: Original purpose was to purchase and rehabilitate property at 123 N Main St, Charles City, IA.

**SHARING CUSTOMER INFORMATION WITH AFFILIATES.** Borrower acknowledges and agrees that Lender may share Borrower's financial information with any affiliate of QCR Holdings, Inc. Lender agrees that it will require those affiliates to maintain the privacy of such information.

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

## CHANGE IN TERMS AGREEMENT
### (Continued)

| Loan No: ███████ | | Page 2 |
| --- | --- | --- |

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CHANGE IN TERMS AGREEMENT AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

BORROWER:

MCQUILLEN PLACE COMPANY, LLC

By: _____
    CHARLES M THOMSON, Member of MCQUILLEN PLACE COMPANY, LLC

AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____
    CHARLES M THOMSON, Trustee of AMELIA TRUST

LENDER:

CEDAR RAPIDS BANK AND TRUST COMPANY

X _____
    Gary M Becker, Senior Vice President

LaserPro, Ver. 17.2.10.027  Copr. D+H USA Corporation 1997, 2017.   All Rights Reserved.   - IA  E:\Apps\LaserPro\CFI\LPL\D20C.FC  TR-3148  PR-9

Exhibit 2

Instr. Number: 2015 0014
BK: 2015 PG: 0014
Recorded: 1/5/2015 at 2:33:21.0 PM
pages 16
Fee Amount: $82.00
Revenue Tax:
Deborah K. Roberts RECORDER
Floyd County, Iowa

**FOR RECORDER'S USE ONLY**

Prepared By: LESA AMENT, CEDAR RAPIDS BANK AND TRUST COMPANY, 500 1ST AVENUE NE
STE 100, CEDAR RAPIDS, IA 52401, (319) 862-2728

RECORDATION REQUESTED BY:
  CEDAR RAPIDS BANK AND TRUST COMPANY, 500 1ST AVENUE NE STE 100, CEDAR RAPIDS,
  IA 52401

WHEN RECORDED MAIL TO:
  CEDAR RAPIDS BANK AND TRUST COMPANY, 500 1ST AVENUE NE STE 100, CEDAR RAPIDS,
  IA 52401



CEDAR
RAPIDS
BANK &
TRUST

## CONSTRUCTION MORTGAGE

**NOTICE:** This Mortgage secures credit in the amount of $3,880,000.00. Loans and advances up to
this amount, together with interest, are senior to indebtedness to other creditors under subsequently
recorded or filed mortgages and liens.

The names of all Grantors (sometimes "Grantor") can be found on page 1 of this Mortgage. The names
of all Grantees (sometimes "Lender") can be found on page 1 of this Mortgage. The property address
can be found on page 2 of this Mortgage. The legal description can be found on page 2 of this
Mortgage.

THIS MORTGAGE dated December 31, 2014, is made and executed between MCQUILLEN PLACE
COMPANY, LLC, an Iowa limited liability company (referred to below as "Grantor") and CEDAR RAPIDS
BANK AND TRUST COMPANY, whose address is 500 1ST AVENUE NE STE 100, CEDAR RAPIDS, IA
52401 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender and
grants to Lender a security interest in all of Grantor's right, title, and interest in and to the following

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| | **MORTGAGE** | |
|---|---|---|
| Loan No: ▮▮▮▮▮ | **(Continued)** | **Page 2** |

described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; rents and profits; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in FLOYD County, State of Iowa:

> See EXHIBIT A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as  123; AND 107-109 MAIN ST, CHARLES CITY, IA  50616.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents. The lien on the rents granted in this Mortgage shall be effective from the date of the Mortgage and not just in the event of default.

**FUTURE ADVANCES.**  In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment.  Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF GRANTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN GRANTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**CONSTRUCTION MORTGAGE.**  This Mortgage secures an obligation incurred for the construction of an improvement on land, and is a "construction mortgage" within the meaning of Section 554.9334 of the Iowa Uniform Commercial Code.  This Mortgage also secures loans or advancements made directly to finance work or improvements upon the real estate described herein, and is a "construction mortgage lien" within the meaning of Section 572.18 of the Iowa Code.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:  None of the collateral for the Indebtedness constitutes, and none of the funds represented by the Indebtedness will be used to purchase:  (1)  Agricultural products or property used for an agricultural purpose as defined in Iowa Code Section 535.13;  (2)  Agricultural land as defined in Iowa Code Section 9H1 (2) or 175.2 (1); or  (3)  Property used for an agricultural purpose as defined in Iowa Code Section 570.A.1 (2).  Grantor represents and warrants that:  (1)  There are not now and will not be any wells situated on the Property;  (2)  There are not now and will not be any solid waste disposal sites on the Property;  (3)  There are not now and there will not be any hazardous wastes on the Property;  (4)  There are not now

Exhibit 3

Loan No: ▮▮▮▮▮▮▮

and there will not be any underground storage tanks on the Property.

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real

**MORTGAGE**
**(Continued)**

Loan No: ███████████                                                      Page 4

---

Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**CONSTRUCTION LOAN.**  The Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work.  Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Iowa law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen

## MORTGAGE
### (Continued)

**Loan No:** [redacted]

Page 5

(15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**MORTGAGE**
**(Continued)**

Loan No: ▓▓▓▓▓▓▓                                                              Page 6

proceeds which have not been disbursed within 180 days after their receipt and which Lender has
not committed to the repair or restoration of the Property shall be used first to pay any amount
owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall
be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment
in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may
appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year,
Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name
of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the
then current replacement value of such property, and the manner of determining that value; and (5)
the expiration date of the policy. Grantor shall, upon request of Lender, have an independent
appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect
Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any
Related Documents, including but not limited to Grantor's failure to discharge or pay when due any
amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender
on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate,
including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and
other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining
and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will
then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the
date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at
Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be
apportioned among and be payable with any installment payments to become due during either (1) the
term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a
balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure
payment of these amounts. Such right shall be in addition to all other rights and remedies to which
Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a
part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property
in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real
Property description or in any title insurance policy, title report, or final title opinion issued in favor
of, and accepted by, Lender in connection with this Mortgage, (b) Grantor has the full right,
power, and authority to execute and deliver this Mortgage to Lender, and (c) the liens granted
hereby are not the type of lien referred to in Chapter 575 of the Iowa Code Supplement, as now
enacted or hereafter modified, amended or replaced. Grantor, for itself and all persons claiming by,
through or under Grantor, agrees that it claims no lien or right to a lien of the type contemplated by
Chapter 575 or any other chapter of the Code of Iowa and further waives all notices and rights
pursuant to said law with respect to the liens hereby granted, and represents and warrants that it is
the sole party entitled to do so and agrees to indemnify, defend, and hold harmless Lender from any
loss, damage, and costs, including reasonable attorneys' fees, threatened or suffered by Lender
arising either directly or indirectly as a result of any claim of the applicability of said law to the liens
hereby granted.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will
forever defend the title to the Property against the lawful claims of all persons. In the event any
action or proceeding is commenced that questions Grantor's title or the interest of Lender under

Exhibit 3

**MORTGAGE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮                                                          Page 7

this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

i

**Loan No:** ███████████

## MORTGAGE
## (Continued)

**Page 8**

**SECURITY AGREEMENT; FINANCING STATEMENTS.**   The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.**  This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.**  Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property.  In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement.  Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest.  Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property.  Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Fixture Filing.**  From the date of its recording, this Mortgage shall be effective as a financing statement filed as a fixture filing with respect to the Personal Property and for this purpose, the name and address of the debtor is the name and address of Grantor as set forth on the first page of this Mortgage and the name and address of the secured party is the name and address of Lender as set forth on the first page of this Mortgage.

**Addresses.**  The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.**  The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.**  At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)  Grantor's obligations under the Note, this Mortgage, and the Related Documents, and  (2)  the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.  Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.**  If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense.  For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.**  If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security

**MORTGAGE**
**(Continued)**

Loan No: ███████                                                    Page 9

═══════════════════════════════════════════════════════════════════════

interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of

**MORTGAGE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮▮▮

Page 10

---

any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving all required notices of default and after passage of any grace period, to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay without notice, except as may be expressly required by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Foreclosure.** Lender may exercise the right to non-judicial foreclosure pursuant to Iowa Code Section 654.18 and Chapter 655A as now enacted or hereafter modified, amended or replaced.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

Exhibit 3

E-FILED    2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**MORTGAGE**

Loan No: ▮▮▮▮▮▮▮           **(Continued)**           **Page 11**

---

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.    This paragraph is subject to any rights of Grantor, under Iowa law, to remain in possession of the Property during a redemption period.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Shortened Redemption.** Grantor hereby agrees that, in the event of foreclosure of this Mortgage, Lender may, at Lender's sole option, elect to reduce the period of redemption pursuant to Iowa Code Sections 628.26, 628.27, or 628.28, or any other Iowa Code Section, to such time as may be then applicable and provided by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| | **MORTGAGE** | |
|---|---|---|
| Loan No: ▮▮▮▮▮▮▮ | **(Continued)** | **Page 12** |

delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Iowa.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**MORGAGE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮                                                        Page 13

---

illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Release of Rights of Dower, Homestead and Distributive Share.** Each of the undersigned hereby relinquishes all rights of dower, homestead and distributive share in and to the Property and waives all rights of exemption as to any of the Property. If a Grantor is not an owner of the Property, that Grantor executes this Mortgage for the sole purpose of relinquishing and waiving such rights.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means MCQUILLEN PLACE COMPANY, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means MCQUILLEN PLACE COMPANY, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or

Exhibit 3

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**MORTGAGE**
·**(Continued)**

**Loan No:** ███████                                                                            **Page 14**

all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.·  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest and late fees, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.  Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Mortgage, together with all interest thereon.

**Lender.** The word "Lender" means CEDAR RAPIDS BANK AND TRUST COMPANY, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 31, 2014, in the·original principal amount of $3,880,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now· or hereafter existing, executed in connection with the Indebtedness.

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| Loan No: ████████ | **MORTGAGE**<br>**(Continued)** | Page 15 |

---

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS MORTGAGE AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.**

**GRANTOR:**

**MCQUILLEN PLACE COMPANY, LLC**

By: _____

    CHARLES M THOMSON, Member of MCQUILLEN PLACE COMPANY, LLC

**AMELIA TRUST**, Member of MCQUILLEN PLACE COMPANY, LLC

By: _____

    CHARLES M THOMSON, Trustee of AMELIA TRUST

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF __Iowa__ )
                                 ) SS

COUNTY OF __Floyd__ )

This record was acknowledged before me on __12/31__, 20__14__ by CHARLES M THOMSON, Member of MCQUILLEN PLACE COMPANY, LLC and CHARLES M THOMSON, Trustee of AMELIA TRUST, Member of MCQUILLEN PLACE COMPANY, LLC.



Lori A. Koresh
Commission Number 220995
MY COMMISSION EXPIRES
2-16-2017

_____
Notary Public in and for the State of __Iowa__

My commission expires __2/16/2017__

---

LaserPro, Ver. 14.4.0.024   Copr. D+H USA Corporation 1997, 2014.   All Rights Reserved.   - IA
W:\CRBT\CFI\LPL\G03.FC TR-9869 PR-3

E-FILED   2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

EXHIBIT A

LOT ONE (1), BLOCK TWENTY ONE (21), EXCEPT THE NORTHWESTERLY TWENTY TWO FEET (NWLY 22') THEREOF, OF THE ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, OTHERWISE DESCRIBED AS: LOT ONE (1) OF THE IRREGULAR SURVEY OF BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES. NOW A PART OF CHARLES CITY, IOWA, EXCEPT THE NORTHWESTERLY TWENTY TWO FEET (NWLY 22') THEREOF;
AND
THE NORTH ONE HALF (N ½) OF THE WEST FORTY FEET (W 40') OF THE BRICK WALL BETWEEN LOTS ONE (1) AND TWO (2), BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY, IOWA;
AND
CHARLES CITY DISASTER REDEVELOPMENT PROJECT IOWA R 36(C) PARCEL NO. R 24 (P 10), MORE PARTICULARLY DESCRIBED AS: THE NORTHWESTERLY 22.00 FEET OF LOT ONE (1), BLOCK TWENTY ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS THE CITY OF CHARLES CITY, FLOYD COUNTY, IOWA. (LOCALLY DESCRIBED AS 123 N. MAIN STREET, CHARLES CITY, IOWA 50616 PARCEL NO. 110146700500)


AND


LOT TWO (2), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY. IOWA.
LOT THREE OF THE IRREGULAR SURVEY OF BLOCK TWENTY-ONE OF THE ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS CHARLES CITY, IOWA.
LOT 4 OF THE SUB-DIVISION OF LOTS 3 AND 4 OF BLOCK 21 OF THE ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS CHARLES CITY, IOWA.
LOT FIVE (5) OF THE IRREGULAR SURVEY OF BLOCK NO. TWENTY-ONE (21) OF THE ORIGINAL PLAT OF ST. CHARLES (NOW INCORPORATED AS CHARLES CITY) ACCORDING TO THE SUB-DIVISION OF SAID BLOCK TWENTY-ONE (21).



CEDAR
RAPIDS
BANK &
TRUST

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA  50616

**Lender:**  CEDAR RAPIDS BANK AND TRUST COMPANY
500 1ST AVENUE NE STE 100
CEDAR RAPIDS, IA  52401

**Guarantor:**  CHARLES M THOMSON
501 SPRIGGS ST
CHARLES CITY , IA  50616

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and to exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties,

<div align="center">

**COMMERCIAL GUARANTY**
(Continued)

</div>

| Loan No: | | Page 2 |

endorsers, or other guarantors on any terms or in any manner Lender may choose;   (E)   to determine how, when and what application of payments and credits shall be made on the Indebtedness;   (F)   to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;   (G)   to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and   (H)   to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**   Guarantor represents and warrants to Lender that   (A)   no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;   (B)   this Guaranty is executed at Borrower's request and not at the request of Lender;   (C)   Guarantor has full power, right and authority to enter into this Guaranty;   (D)   the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;   (E)   Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;   (F)   upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;   (G)   no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;   (H)   no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;   (I)   Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and   (J)   Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.   Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.**   Guarantor agrees to furnish Lender with the following:

> **Tax Returns.**   As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by Guarantor.

> **Additional Requirements.   Annual Statements.**   As soon as available , but in not event no less than every 12 months, a current personal financial statement prepared by Guarantor in a form acceptable to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.**   Except as prohibited by applicable law, Guarantor waives any right to require Lender   (A)   to continue lending money or to extend other credit to Borrower;   (B)   to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;   (C)   to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;   (D)   to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;   (E)   to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;   (F)   to pursue any other remedy within Lender's power; or   (G)   to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of   (A)   any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;   (B)   any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;   (C)   any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;   (D)   any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;   (E)   any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or   (F)   any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.   If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**   Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.   If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**COLLATERAL.**   This Guaranty is secured by Real Estate Mortgage dated 12/31/2014 for property located at 501 Spriggs Street, Charles City, Iowa, and

Assignment of Life Insurance Policy #040-001543324, dated 10/17/2014.

**RIGHT OF SETOFF.**   To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).   This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.   However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.   Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in those accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**   Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.   Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.   In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| Loan No: ▓▓▓▓▓▓ | **COMMERCIAL GUARANTY** (Continued) | Page 3 |
|---|---|---|

the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means MCQUILLEN PLACE COMPANY, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: ▇▇▇▇▇▇▇                                                                Page 4

---

GAAP.  The word "GAAP" means generally accepted accounting principles.

Guarantor.  The word "Guarantor" means everyone signing this Guaranty, including without limitation CHARLES M THOMSON, and in each case, any signer's successors and assigns.

Guaranty.  The word "Guaranty" means this guaranty from Guarantor to Lender.

Indebtedness.  The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

Lender.  The word "Lender" means CEDAR RAPIDS BANK AND TRUST COMPANY, its successors and assigns.

Note.  The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

Related Documents.  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness. ,

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED DECEMBER 31, 2014.

GUARANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS COMMERCIAL GUARANTY AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

GUARANTOR:

X_____

CHARLES M THOMSON

---

LaserPro, Ver. 14.4.0.024  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - IA  WACKER\DFI\FI\03.FC  TR-6903  PR-3

Exhibit 4



**CEDAR
RAPIDS
BANK &
TRUST**

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer 709 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA 50616

**Lender:** CEDAR RAPIDS BANK AND TRUST COMPANY
500 1ST AVENUE NE STE 100
CEDAR RAPIDS, IA 52401

**Guarantor:** AMELIA TRUST
1110 N GRAND STE 300
CHARLES CITY, IA 50616

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties,

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**COMMERCIAL GUARANTY**
**(Continued)**

Page 2

Loan No: ▮▮▮▮▮▮

endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such further actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

    **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: [redacted]                                                                                                                  Page 3

---

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised of Guarantor's attorney with respect to this Guaranty. The Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed as an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means MCQUILLEN PLACE COMPANY, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation AMELIA TRUST, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means CEDAR RAPIDS BANK AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments,

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| Loan No: ███████ | **COMMERCIAL GUARANTY**<br>(Continued) | Page 4 |
|---|---|---|

agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 31, 2014.

GUARANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS COMMERCIAL GUARANTY AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

GUARANTOR:

AMELIA TRUST

By: _____
CHARLES M THOMSON, Trustee of AMELIA TRUST

LaserPro, Ver. 14.4.0.024  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - IA  WIN/CRI/TK/CRILPL/E20.FC  TR-9663  PR-2

Exhibit 5

CEDAR RAPIDS BANK & TRUST

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | 709 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MCQUILLEN PLACE COMPANY, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA 50616

**Lender:** CEDAR RAPIDS BANK AND TRUST COMPANY
500 1ST AVENUE NE STE 100
CEDAR RAPIDS, IA 52401

**Guarantor:** AMELIA MANAGEMENT, LLC
1110 N GRAND AVE STE 300
CHARLES CITY, IA 50616

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties,

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**COMMERCIAL GUARANTY**
(Continued)

Loan No: ▮▮▮▮▮▮▮                                                                                      Page 2

endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B)  this Guaranty is executed at Borrower's request and not at the request of Lender;  (C)  Guarantor has full power, right and authority to enter into this Guaranty;  (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and  (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D)  to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**COLLATERAL.**  This Guaranty is secured by Real Estate Morgage dated 12/31/2014 for property located at 704 Cedar St., Charles City, Iowa

Real Estate Morgage dated 12/31/2014 for property located at 206 N Main St., Charles City, Iowa

Real Estate Morgage dated 12/31/2014 for property located at 208 N Main St., Charles City, Iowa

Real Estate Morgage dated 12/31/2014 for property located at 505 Kellogg Ave., Charles City, Iowa

Real Estate Morgage dated 12/31/2014 for property located at 2652 Hervey St., Charles City, Iowa

Real Estate Morgage dated 12/31/2014 for propety located at 1110 N Grand Ave., Charles City, Iowa.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.  Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of

Exhibit 6

| Loan No: ▆▆▆▆▆▆ | **COMMERCIAL GUARANTY**<br>**(Continued)** | Page 3 |

Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions.

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**COUNTERPART.** This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument. Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means MCQUILLEN PLACE COMPANY, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation AMELIA MANAGEMENT, LLC, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| Loan No: ▮▮▮▮▮ | **COMMERCIAL GUARANTY**<br>**(Continued)** | Page 4 |
|---|---|---|

**Indebtedness.** The word "Indebtedness" means Borrower's Indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means CEDAR RAPIDS BANK AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 31, 2014.

GUARANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS COMMERCIAL GUARANTY AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

GUARANTOR:

AMELIA MANAGEMENT, LLC

By: _____

    CHARLES M THOMSON, Member of AMELIA
    MANAGEMENT, LLC

AMELIA TRUST, Member of AMELIA MANAGEMENT, LLC

By: _____

    CHARLES M THOMSON, Trustee of AMELIA TRUST

LaserPro, Ver. 14.4.0.034 Copr. D + H USA Corporation 1997, 2014.  All Rights Reserved.  - IA W\CFS\CPI\LPL\E3.FC TR-9983 PR-3

purple

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

## COMMERCIAL GUARANTY
### (Continued)

| Loan No: | | Page 2 |

termination of this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Guarantor's Share of the Indebtedness remains unpaid and even though the Guarantor's Share of the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:  (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B) this Guaranty is executed at Borrower's request and not at the request of Lender;  (C) Guarantor has full power, right and authority to enter into this Guaranty;  (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and  (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S FINANCIAL STATEMENTS.**  Guarantor agrees to furnish Lender with the following:

> **Tax Returns.**  As soon as available, but in no event later than thirty (30) days after the applicable filing date for the tax reporting period ended, Guarantor's Federal and other governmental tax returns, prepared by Guarantor.

> **Additional Requirements.**  Annual Statements.  As soon as available , but in not event no less than every 12 months, a current personal financial statement prepared by Guarantor in a form acceptable to Lender.

All financial reports required to be provided under this Guaranty shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Guarantor as being true and correct.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;  (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F) to pursue any other remedy within Lender's power; or  (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

**COMMERCIAL GUARANTY**
(Continued)

Loan No: ███████████                                                                 Page 3

prohibited by law.  Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.**  This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Iowa without regard to its conflicts of law provisions.

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Linn County, State of Iowa.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.**  Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**COUNTERPART.**  This agreement may be executed in counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart, and all of which together shall constitute one and the same instrument.  Facsimiles, photocopies or other electronic reproductions or copies of original signatures are deemed as legally enforceable as the originals thereof.

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

| Loan No: ██████████ | **COMMERCIAL GUARANTY** (Continued) | Page 4 |

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means MCQUILLEN PLACE COMPANY, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation ROBERT L THOMSON, and in each case, any signer's successors and assigns.

**Guarantor's Share of the Indebtedness.** The words "Guarantor's Share of the Indebtedness" mean Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means CEDAR RAPIDS BANK AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 31, 2014, in the original principal amount of $3,880,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 31, 2014.

GUARANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS COMMERCIAL GUARANTY AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

**GUARANTOR:**

X _____
ROBERT L THOMSON

LaserPro, Ver. 14.4.0.024  Copr. D & H USA Corporation 1997, 2014.  All Rights Reserved.  - IA  W:\CR\TFC\FILEPL\E20.FC  TR-5153  PR-3

E-FILED  2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT



phone: 319.862.2728 | www.crbt.com

Member FDIC

## NOTICE OF DEFAULT

January 11, 2018

McQuillen Place Company, LLC, Borrower
Attn: Charles M. Thomson, Member
1110 N. Grand Avenue, Ste. 300
Charles City, IA.  50616

Charles M. Thomson, Guarantor
501 Spriggs Street
Charles City, IA.  50616

Robert L. Thomson, Guarantor
401 Spriggs Street
Charles City, IA.  50616

Amelia Management, LLC, Guarantor
Attn: Charles M. Thomson, Member
1110 N. Grand Avenue, Ste. 300
Charles City, IA.  50616

Amelia Trust, Guarantor
Attn: Charles M. Thomson, Trustee
1110 N. Grand Avenue, Ste. 300
Charles City, IA.  50616

Re:          Loan Number ███████

Said Note is now in default under the terms and conditions thereof. Specifically, said default is
the result of failure to pay sums due under the Note upon the Maturity date of December 15,
2017. The outstanding principal balance is $3,879,992.13. This amount does not include
accrued interest, any accrued and outstanding late fees, default interest, and any other costs of
collection incurred by Cedar Rapids Bank and Trust Company ("CRBT") now, or in the future, per
the terms and conditions contained in the Note. You have a right to correct this default on, or
before, **January 31, 2018**, by paying CRBT the entire unpaid indebtedness, as well as fees
accrued. Acceptance by CRBT of a partial payment (that is, a payment other than the entire
amount indicated above) does not waive any of its rights under the Note, or this Notice.

## People you can bank on.®

E-FILED 2018 MAR 14 3:56 PM FLOYD - CLERK OF DISTRICT COURT

Acceptance of partial payment shall not be deemed or considered, and shall not constitute, satisfaction or cure of the default described herein.

If you do not correct this default by the date stated above, CRBT may exercise its rights against you under the law, and under the terms of the Note and all Guarantees.

If you have any questions, write or telephone Cedar Rapids Bank and Trust Company, 500 1st Avenue NE, Ste. 100, Cedar Rapids, IA 52401, or, call me at (319) 743-7017.

David V. Castelluccio
Vice President, Special Assets

Cc: Diane Wolfe, Vice President and Chief Credit Officer, 1st Security Bank - via e-mail
dwolfe@1stsecuritybank.com

Member FDIC

People you can bank on.®