<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:    Identify the Claim

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim) _____

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☐ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name _____ | Name _____ |
| Number        Street | Number        Street |
| City                State        ZIP Code | City                State        ZIP Code |
| Contact phone _____ | Contact phone _____ |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  /  DD  /  YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☐ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

7. **How much is the claim?**    $_____. **Does this amount include interest or other charges?**
☐ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

9. **Is all or part of the claim secured?**
☐ No
☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____
**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☐ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**
☐ No
☐ Yes. Identify the property: _____

Official Form 410                                **Proof of Claim**                                page 2

| 12 | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?  A claim may be partly priority and partly nonpriority  For example, in some categories, the law limits the amount entitled to priority | ☑ No ☐ Yes  *Check one* |  |
|---|---|---|---|
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U S C § 507(a)(1)(A) or (a)(1)(B) | $_____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use  11 U S C § 507(a)(7) | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier 11 U S C § 507(a)(4) | $_____ |
| | | ☐ Taxes or penalties owed to governmental units  11 U S C § 507(a)(8) | $_____ |
| | | ☐ Contributions to an employee benefit plan  11 U S C § 507(a)(5) | $_____ |
| | | ☐ Other  Specify subsection of 11 U S C § 507(a)(___) that applies | $_____ |
| | | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment | |

## Part 3: Sign Below

| The person completing this proof of claim must sign and date it FRBP 9011(b)  If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is  **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both 18 U S C §§ 152, 157, and 3571** | *Check the appropriate box*  ☐ I am the creditor ☑ I am the creditor's attorney or authorized agent ☐ I am the trustee, or the debtor, or their authorized agent  Bankruptcy Rule 3004 ☐ I am a guarantor, surety, endorser, or other codebtor  Bankruptcy Rule 3005  I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt  I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct  I declare under penalty of perjury that the foregoing is true and correct |
|---|---|
| | Executed on date  10/21/2019   MM / DD / YYYY |
| | _____ Signature |
| | Print the name of the person who is completing and signing this claim |
| | Name  Rita C  Grimm   First name        Middle name        Last name |
| | Title  COO and Chief Legal Counsel |
| | Company  Iowa Economic Development Authority   Identify the corporate servicer as the company if the authorized agent is a servicer |
| | Address  200 E Grand Avenue   Number    Street |
| | Des Moines              IA        50309   City                State    ZIP Code |
| | Contact phone  515-348-6142        Email  Rita Grimm@IowaEDA com |

**Document 2019-1383**

Book 2019 Page 1383 Type AMTG Pages 2
Date 7/11/2019  Time  9:45 AM
Rec Amt $12.00

√INDX
CCHCK
√NOTE
√SCAN
ODD

DEBORAH K ROBERTS, COUNTY RECORDER
FLOYD COUNTY IOWA

| | |
|---|---|
| Prepared by: | Gerald M. Stambaugh, Heiny, McManigal, Duffy, Stambaugh & Anderson, PLC, 11 Fourth Street, N.E., P.O. Box 1567, Mason City, Iowa 50402-1567, Telephone: 641-423-5154, Fax: 641-423-5310; Email: gstambaugh@heinylaw.com |
| Return to: | Gerald M. Stambaugh, Heiny, McManigal, Duffy, Stambaugh & Anderson, PLC, 11 Fourth Street, N.E., P.O. Box 1567, Mason City, Iowa 50402-1567 |

### ASSIGNMENT OF:

1. MORTGAGE DATED JULY 5, 2013, SIGNED JANUARY 8, 2015 RECORDED JANUARY 15, 2015 AS DOCUMENT NO. 2015-0100 IN THE OFFICE OF THE FLOYD COUNTY RECORDER.
2. RESTRICTIONS AGREEMENT DATED JULY 5, 2013 SIGNED NOVEMBER 5, 2014 AND NOVEMBER 14, 2014 BETWEEN McQUILLEN PLACE COMPANY, LLC AND CERRO GORDO COUNTY
3. PROMISSORY NOTE SIGNED JUNE 20, 2014 REFLECTING McQUILLEN PLACE COMPANY, LLC AS BORROWER AND CERRO GORDO COUNTY AS LENDER

Cerro Gordo County, an Iowa municipal corporation organized under Iowa Code Chapter 331, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, sells, assigns, transfers to Iowa Economic Development Authority (IEDA), an agency of the State of Iowa, all right, title, and interest in and to:

A.   the assets described in the caption,

B.   all obligations secured by and described by each of the assets described in the caption, and

C.   all rights, benefits, judgments, property and interests that may pertain to or arise from or be associated with Floyd County Cause No. EQCV031170, subject to and together with all duties and obligations thereunder.

Cerro Gordo County agrees to execute such other documents as are reasonably required to reflect the foregoing.

This Assignment is without recourse.

6-21-19

1

Cerro Gordo County

By: _____ Dated: 7-2-19
Chris Watts, Chair Person

By: _____ Dated: 7/2/19
Adam V. Wedmore, County Auditor,
as Secretary to the Board

STATE OF IOWA, COUNTY OF CERRO GORDO,  ss:

On this _2nd_ day of _July_ 2019, before me the undersigned, a Notary Public in and for said State, personally appeared **Chris Watts, Chair Person and Adam V. Wedmore, County Auditor**, to me personally known, who, being by me duly sworn, did say that they are the Chair Person of the Cerro Gordo County Board of Supervisors and the County Auditor, respectively, of the County of Cerro Gordo, organized under Iowa Code Chapter 331, the seal affixed to the foregoing instrument is the corporate seal of the County and the instrument was signed and sealed on behalf of the County by authority of its Board of Supervisors as contained in Resolution No. 2019- _N A_ passed by the Board of Supervisors the ___ day of _____, 2019 and **Chris Watts and Adam V. Wedmore** acknowledged the execution of said instrument to be their voluntary acts and deeds and the voluntary act and deed of the County, by it and by them voluntarily executed.



MICHELLE R. RUSH
Commission Number 158744
My Commission Expires
December 06, 2020

Notary Public in and for said State

GMS:lrb:R:\Stambaugh\re\assignment\nicaog.mcquillen.6-21-19.doc

6-21-19                                          2



Document 2015-0100

Book 2015 Page 0100 Type MTG Pages 7
Date  1/15/2015   Time 10:41 AM
Rec Amt $37.00                                    ✓INDX
                                                 ✓CHCK
                                                  NOTE

DEBORAH K ROBERTS, COUNTY RECORDER ✓SCAN
FLOYD COUNTY IOWA                           ODD

Prepared by and return to: Myrtle Nelson, NIACOG, 525 6th St. SW, Mason City, IA 50401, 641-423-0491.
Mortgagor/Taxpayer:    McQuillen Place Company, LLC, 1110 North Grand Ave., Suite 300, Charles City, IA 50616
Mortgagee: Cerro Gordo County, Courthouse, 220 N Washington Ave., Mason City, IA 50401
Legal Description: See attached Addendum #1.

### FORGIVABLE MORTGAGE

**FROM**

### MCQUILLEN PLACE COMPANY, LLC

**TO**

**CERRO GORDO COUNTY**

**July 5, 2013**
Date

Notice: This Mortgage secures a loan in the amount of $2,940,000. This Loan is senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens, unless    the    Lender    enters    into    a    written    subordination    agreement.

4833-4972-4419\2  10/5/2012

## MULTI FAMILY UNIT PRODUCTION – NEW CONSTRUCTION ASSISTANCE

### FORGIVABLE MORTGAGE

**Notice: This Forgivable Mortgage ("*Mortgage*") secures a loan ("*Loan*") in the amount of $2,940,000 ("Original Loan Amount"). This Loan is senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens, unless the Lender enters into a written subordination agreement.**

**Grant of Mortgage**. For valuable consideration, McQuillen Place Company, LLC *( "Grantor")* hereby grants, mortgages and conveys to Cerro Gordo County *("Lender")* a security interest and in all of Grantor's right, title, and interest in and to the following described real property *("Land")* located in the County of Floyd:

### Said legal description is affixed upon attached Addendum #1.

and (i) all buildings, structures and improvements now standing or at any time hereafter constructed or placed upon the Land (the "Buildings"), including all hereditaments, easements, appurtenances, riparian rights, mineral rights, water rights, rights in and to the lands lying in streets, alleys and roads adjoining the land, estates and other rights and interest now or hereafter belonging to or in any way pertaining to the Land; (ii) all fixtures and other personal property integrally belonging to, or hereafter becoming an integral part of the Land or Buildings, whether attached or detached, including but not limited to, light fixtures, shades, rods, blinds, Venetian blinds, awnings, storm windows, screens, linoleum, water softeners, automatic heating and air-conditioning equipment and all proceeds, products, increase, issue, accessions, attachments, accessories, parts, additions, repairs, replacements and substitutes of, to and for the foregoing the ("Personal Property"); and (iii) all rents, issues, profits, leases, condemnation awards and insurance proceeds now or hereafter arising from the ownership, occupancy or use of the Land, Buildings and Personal Property, or any part thereof (the "Revenues and Income") (the Land, the Buildings, the Personal Property and the Revenues and Income are collectively referred to herein as the "Mortgaged Property").

All of the rents, issues, proceeds and profits and any and all leases, subleases and the rights of management of the Mortgaged Property are hereby assigned to the Lender as further security for the payment of the Loan. Such assignment, grant and conveyance is intended by the parties hereto to be a present conveyance of and security interest in and chattel mortgage upon such collateral, subject to the right of the Grantor to receive the same prior to any default hereunder, and is not a mere pledge of such collateral to be given effect as a lien upon default, foreclosure and the appointment of a receiver. The Grantor agrees that it will duly perform and observe all of the terms and provisions of the landlord's part to be performed and observed under any and all leases of the Mortgaged Property and that it will refrain from any action or inaction which would result in the termination by the tenants thereunder of any such leases or subleases or in the diminution of the value thereof or of the rents, issues, profits and revenues thereunder. Nothing herein contained shall be deemed to obligate the Lender to perform or discharge any obligation, duty or liability of landlord under any lease of the Mortgaged Property, and the Grantor shall and does hereby agree to indemnify and hold the Lender harmless from any and all liability, loss or damage which the Lender may or might incur under any lease of the Mortgaged Property, and any and all such liability, loss or damage incurred by the Lender, together with the costs and expenses, including reasonable attorneys' fees, incurred by the Lender in the defense of any claims or demands therefor (whether successful or not), shall be so much additional indebtedness hereby secured, and the Grantor shall reimburse the Lender therefor on demand.

The Land or its address is commonly known as 123 North Main Street, Charles City, IA 50616. This Mortgage is given to secure the Grantor's performance of (i) any and all obligations under the Forgivable Loan Promissory Note ("Note") executed by the Grantor on this date and payable

1

to the Lender; and (ii) any and all covenants, requirements and obligations under the Agreement for Covenants and Restrictions dated the date hereof (the Restrictions Agreement") between the Grantor and the Lender.

**Performance.** Except as otherwise provided in this Mortgage or the Note, the Grantor shall strictly perform all of Grantor's obligations under this Mortgage, the Note and the Restrictions Agreement.

**Terms and Conditions**

1. Affordability Period.  The Grantor shall comply with the terms of the Note, the Restrictions Agreement and this Mortgage for a term of TEN (10) years from the date of execution of this Mortgage *("Affordability Period")*.  The Loan shall be forgiven in full on the TENTH anniversary of the date the Grantor executed this Mortgage.

2. Compliance with Restrictions Agreement.

The Grantor shall strictly comply with the Restrictions Agreement at all times during the Affordability Period.  If, during the Affordability Period, the Grantor is not in compliance with the restrictions and covenants contained in the Restrictions Agreement, the Grantor shall immediately pay the Lender the principal amount of the Loan plus any additional amounts advanced by the Lender hereunder.

3. Sale of Property.

Except for the rental of units in the Mortgaged Property to tenants, during the Term of Affordability, the Grantor hereby covenants and agrees not to sell, transfer or otherwise dispose of the Mortgaged Property or any interest therein.  If, during the Term of Affordability, the Grantor sells, rents (other than the rental of units in the Mortgaged Property to tenants and other than any portion of the Mortgaged Property disposed of as a result of its deteriorating condition or obsolescence as determined in the normal course of business and which is replaced with similar property of equal or greater value) or uses the Mortgaged Property in a manner not permitted under the Restrictions Agreement or hereunder, the Grantor shall immediately pay the Lender the principal amount of the Loan plus any additional amounts advanced by the Lender under the Mortgage.

4. Other Loans; Refinance.  If the Grantor refinances any first lien on the Mortgaged Property during the Affordability Period, the Lender may, in its sole discretion, agree to sign a subordination agreement subordinating this Mortgage to the new mortgage.  The Grantor shall not refinance such first lien on the Mortgaged Property for an amount greater than the amount of the then outstanding indebtedness secured by such first lien without the prior written consent of the Lender.  If the Grantor refinances both the first mortgage and this Mortgage during the Affordability Period, the Grantor shall pay the Lender the entire principal amount of the Loan.

5. Duty to Maintain.  Grantor shall maintain the Mortgaged Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value and shall not cause or suffer waste on or to the Mortgaged Property.

6. Taxes and Liens.  Grantor shall pay all taxes and special assessments before the taxes or special assessments become delinquent.  Grantor shall maintain the Mortgaged Property free of any liens having priority over the interest of the Lender, except as specifically agreed to in writing by the Lender or as provided herein.

7. Insurance.  Grantor shall keep in force property and liability insurance with a standard mortgagee clause in favor of the Lender covering all improvements on the Mortgaged Property against loss by fire, tornado and other hazards in an amount not less than the total combined

2

mortgages and liens on the Mortgaged Property. Grantor shall provide proof of insurance and appropriate riders to the Lender and shall pay all premiums on the insurance when due.

8. Lender's Expenses. If the Grantor fails to (a) pay all taxes, (b) maintain required insurance coverage on the Mortgaged Property, or (c) maintain the Mortgaged Property in good condition, the Lender may do so, at the Lender's sole discretion. The Grantor shall be obligated to repay all expenses incurred or paid by Lender for such purposes. The rights provided in this paragraph shall be in addition to any other rights or any remedies to which the Lender may be entitled as a result of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

9. Default Events. At Lender's option, Grantor will be in default under this Mortgage if any of the following happens:

    a. The Grantor fails to strictly comply with the covenants and requirements of the Restrictions Agreement.
    b. The Grantor sells, transfers or otherwise disposes of the Mortgaged Property other than as permitted under the Restrictions Agreement.
    c. The Grantor fails to pay all taxes when due, to pay the insurance when due, or to maintain the property in good condition.

10. Acceleration of Maturity and Receivership. If the Grantor defaults on this Mortgage, the Restrictions Agreement and/or the Note, the Lender may declare the Grantor in default and the entire principal amount of the Loan plus any payments made by the Lender for taxes, assessments, insurance premiums, or repairs shall become due and owing and the entire amount shall be collectable by foreclosure or otherwise. At any time after the commencement of any action in foreclosure, or during the period of redemption, and upon the request of the Lender, the court shall appoint a receiver to take immediate possession of the Mortgaged Property and of the revenues and income accruing therefrom, and to rent or cultivate the same as such receiver may deem best for the interest of all parties concerned, and such receiver shall be liable to account to the Grantor only for the net profits, after application of rents, issues and profits upon the costs and expenses of the receivership and foreclosure and upon the Loan.

11. Attorneys Fees. If Lender institutes any suit to enforce this Mortgage, the Restrictions Agreement and/or the Note and to foreclose on the Mortgage, the Grantor shall pay all costs of the action, including reasonable attorneys' fees, court costs, and abstracting fees.

12. Non-judicial Foreclosure. Lender may exercise the right to non-judicial foreclosure pursuant to Iowa Code section 654.18 and Chapter 655A as currently enacted or hereafter modified, amended or replaced.

13. Shortened Redemption. It is agreed that if this Mortgage covers less than ten (10) acres of land, and in the event of foreclosure of this Mortgage and sale of the property by sheriff's sale in such foreclosure proceedings, the time of one year for redemption from said sale provided by the statute of the State of Iowa shall be reduced to six (6) months provided the Lender, in such action files an election to waive any deficiency judgment against Grantor which may arise out of the foreclosure proceedings; all to be consistent with the provisions of Chapter 628 of the Iowa Code. If the redemption period is so reduced, for the first three (3) months after sale such right of redemption shall be exclusive to the Grantor, and the time periods in Sections 628.5, 628.15 and 628.16 of the Iowa Code shall be reduced to four (4) months.

It is further agreed that the period of redemption after a foreclosure of this Mortgage shall be reduced to sixty (60) days if all of the three following contingencies develop: (i) the Land is less than ten (10) acres in size; (ii) the court finds affirmatively that the Land has been abandoned by the owners and those persons personally liable under this Mortgage at the time of such foreclosure; and (3) the Lender files an election to waive any deficiency judgment against the

3

Grantor or their successors in interest in such action. If the redemption period is so reduced, the Grantor or the Grantor's successors in interest or the owner shall have the exclusive right to redeem for the first thirty (30) days after such sale, and the time provided for redemption by creditors as provided in Sections 628.5, 628.15 and 628.16 of the Iowa Code shall be reduced to forty (40) days. Entry of appearance by pleading or docket entry by or on behalf of the Grantor shall be a presumption that the property has not been abandoned. Any such redemption period shall be consistent with all of the provisions of Chapter 628 of the Iowa Code. This paragraph shall not be construed to limit or otherwise affect any other redemption provisions contained in Chapter 28 of the Iowa Code.

14. Forbearance not a Waiver, Rights and Remedies Cumulative. No delay by the Lender in exercising any right or remedy provided herein or otherwise afforded by law or equity shall be deemed a waiver of or preclude the exercise of such right or remedy, and no waiver by the Lender of any particular provisions of this Mortgage shall be deemed effective unless in writing signed by the Lender. All such rights and remedies provided for herein or which the Lender may have otherwise, at law or in equity, shall be distinct, separate and cumulative and may be exercised concurrently, independently or successively in any order whatsoever, and as often as the occasion therefor arises.

15. Governing Law. This Mortgage and the Note shall be construed in accordance with the laws of the State of Iowa and the federal laws and regulations governing the Rental Rehabilitation Assistance (Small Projects) program.

16. Warranty of Title. The Grantor warrants that Grantor holds good and marketable title of record to the Mortgaged Property in fee simple, clear of all liens and encumbrances other than one first mortgage lien securing a loan meeting the requirements of the Program and agreed to by the Lender.

17. Eminent Domain. If the Mortgaged Property is subject to eminent domain proceedings, the transfer shall constitute a sale of the Mortgaged Property and the proceeds shall be subject to the recapture provisions as provided in Section 2 hereof.

18. Severability. If any portion of this Mortgage shall, for any reason, be held to be invalid, illegal or unenforceable in whole or in part, the remaining provisions shall not be affected thereby and shall continue to be valid and enforceable and if, for any reason, a court finds that any provision of this Mortgage is invalid, illegal, or unenforceable as written, but that by limiting such provision it would become valid, legal and enforceable then such provision shall be deemed to be written, construed and enforced as so limited.

19. Notices. Any notice provided for under this Mortgage shall be given in writing by registered or certified mail, by receipted hand delivery, or by courier and addressed to the Grantor at the [Grantor's address]. Notice shall be effective at the earliest of (a) the time it is actually received, (b) within one day if it is delivered using an overnight courier service, or (c) within five days after it is deposited in the U.S. mail if it is delivered using registered or certified mail.

20. Successors and Assigns. Subject to any limitations stated in this Mortgage, this Mortgage shall be binding on and inure to the benefit of the parties' successors and assigns.

21. Time is of the Essence. Time is of the essence in the performance of this Mortgage, the Restrictions Agreement and the Note.

22. Release of Rights of Dower, Homestead and Distributive Share. The undersigned Grantor hereby relinquishes all rights of dower, homestead and distributive share in and to the Mortgaged Property and waives all rights of exemption as to any of the Mortgaged Property. If a Grantor is not an owner of the Property, that Grantor executes this Mortgage for the sole purpose of relinquishing and waiving such rights.

4

23. <u>Impact on Real Property</u>. All of the terms and conditions herein shall run with and encumber the Mortgaged Property, and be binding upon the Grantor and the Grantor's successors and/or assigns during the Affordability Period. The lien of this Mortgage upon the Mortgaged Property shall automatically terminate at the end of the Affordability Period.

**EACH GRANTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH AGREES ITS TERMS.**

**GRANTOR ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS MORTGAGE AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.**

**GRANTOR:**

McQuillen Place Company, LLC

By: _____

Name:_ Charles M. Thomson _____

Title:___ Managing Member _____

Date: _____

**ACKNOWLEDGEMENT**

**STATE OF IOWA**                  )
                                   ) SS
**COUNTY OF FLOYD**                )

This instrument was acknowledged before me this ____ day of _____, 20__ by Charles M. Thomson as the Managing Member of McQuillen Place Company, LLC, to me personally known who, being by me duly sworn, did say that said instrument was signed on behalf of McQuillen Place Company, LLC by authority of its Partners and that he acknowledged the execution of said instrument to be the voluntary act and deed of said Partners by them and by he voluntarily executed.

**Seal**

JOHANNAH R. CHAMBERS
Commission Number 776663
My Commission Expires

**Notary Public in and for the State of Iowa**

Commission Expires: _____

5

# Addendum #1

Legal Description

LOT ONE (1), BLOCK TWENTY-ONE (21), EXCEPT THE NORTHWESTERLY TWENTY-TWO FEET (NWLY 22') THEREOF, OF THE ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, OTHERWISE DESCRIBED AS:  LOT ONE (1) OF THE IRREGULAR SURVEY OF BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, EXCEPT THE NORTHWESTERLY TWENTY-TWO FEET (NWLY 22') THEREOF;

AND

THE NORTH ONE-HALF (N½) OF THE WEST FORTY FEET (W 40') OF THE BRICK WALL BETWEEN LOTS ONE (1) AND TWO (2), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY, IOWA;

AND

CHARLES CITY DISASTER REDEVELOPMENT PROJECT IOWA R-36(C) PARCEL NO. R-24 (P-10), MORE PARTICULARLY DESCRIBED AS:  THE NORTHWESTERLY 22.00 FEET OF LOT ONE (1), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS THE CITY OF CHARLES CITY, FLOYD COUNTY, IOWA

(Locally described as 123 N. Main Street, Charles City, Iowa  50616
Parcel No. 11-01-467-005-00)

AND

Lot Two (2), Block Twenty-one (21), Original Plat of St. Charles, now incorporated as a part of Charles City, Iowa.

Lot Three of the Irregular Survey of Block Twenty-one of the Original Plat of St. Charles, now incorporated as Charles City, Iowa.

Lot 4 of the Sub-division of Lots 3 and 4 of Block 21 of the Original Plat of St. Charles, now Incorporated as Charles City, Iowa.

Lot five (5) of the Irregular Survey of Block No. Twenty-One (21) of the Original Plat of St. Charles (now incorporated as Charles City) according to the Sub-Division of said Block Twenty-One (21).

**MULTI-FAMILY UNIT PRODUCTION - NEW CONSTRUCTION ASSISTANCE**

**FORGIVABLE LOAN PROMISSORY NOTE**

**Borrower:**  McQuillen Place Company, LLC        **Lender:**        Cerro Gordo County

For the value received, McQuillen Place Company, LLC ("*Borrower*") promises to pay to CERRO GORDO COUNTY ("Lender"), its successors or assigns, the sum of (A) $2,940,000 ("*Original Loan Amount*") or (B) the amount as determined under the Terms and Conditions provisions set forth below (collectively, "*Loan*").

**Terms and Conditions**: The Borrower agrees that:

1. Affordability Period. The Borrower shall comply with the terms of this Forgivable Loan Promissory Note for a term of TEN (10) years from the date of execution of this Forgivable Loan Promissory Note *("Affordability Period")*. The Loan shall be forgiven in full on the TENTH anniversary of the date the Borrower executed this Forgivable Loan Promissory Note.

2. Compliance with Restrictions Agreement. The Borrower shall strictly comply with the provisions of the Agreement for Covenants and Restrictions dated as of the date hereof (the "Restrictions Agreement") between the Borrower and the Lender, at all times during the Affordability Period. If, during the Affordability Period, the Grantor is not in compliance with the restrictions and covenants contained in the Restrictions Agreement, the Grantor shall immediately pay the Lender the principal amount of the Loan plus any additional amounts advanced by the Lender under the Mortgage (defined herein).

3. Sale of Property. Except for the rental of units in the Mortgaged Property to tenants, during the Term of Affordability, the Borrower hereby covenants and agrees not to sell, transfer or otherwise dispose of the Mortgaged Property or any interest therein. If, during the Term of Affordability, the Borrower sells, rents (other than the rental of units in the Mortgaged Property to tenants and other than any portion of the Mortgaged Property disposed of as a result of its deteriorating condition or obsolescence as determined in the normal course of business and which is replaced with similar property of equal or greater value) or uses the Mortgaged Property in a manner not permitted under the Restrictions Agreement or hereunder, the Borrower shall immediately pay the Lender the principal amount of the Loan plus any additional amounts advanced by the Lender under the Mortgage.

4. Other Loans; Refinance. If the Borrower refinances any first lien on the Mortgaged Property during the Affordability Period, the Lender may, in its sole discretion, agree to sign a subordination agreement subordinating the mortgage securing the Loan to the new mortgage. The Grantor shall not refinance such first lien on the Mortgaged Property for an amount greater than the then outstanding indebtedness secured by such first lien without the prior written consent of the Lender. If the Borrower refinances both the first mortgage and this mortgage during the Affordability Period, the Borrower shall pay the Lender the entire principal amount of the Loan.

5. Collateral and Mortgage. Borrower acknowledges this Forgivable Loan Promissory Note is secured by a Forgivable Mortgage dated the date hereof (the "*Mortgage*") on real estate located at 123 North Main Street, Charles City, IA 50616. In addition, Borrower acknowledges that, as a condition to the Lender making this Loan, Borrower is required to enter into the Restrictions Agreement. Borrower further agrees to be bound by the terms and conditions of the Mortgage and the Restrictions Agreement and agrees that the terms and conditions of the Mortgage and the Restrictions Agreement are incorporated into this Forgivable Loan Promissory Note as fully set forth herein.

1

BEFORE SIGNING THIS FORGIVABLE LOAN PROMISSORY NOTE, I (WE) READ AND UNDERSTOOD ALL THE PROVISIONS AND I (WE) AGREE TO THE TERMS OF THIS FORGIVABLE LOAN PROMISSORY NOTE.

I (WE) ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS FORGIVABLE LOAN PROMISSORY NOTE AND ALL OTHER DOCUMENTS RELATING TO THIS DEBT.

**BORROWER:**

McQuillen Place Company, LLC

By: _____

Name: Charles M. Thomson

Title: _____

Date: _____

2

Prepared by and return to: Myrtle Nelson, NIACOG, 525 6th St. SW, Mason City, IA 50401, 641-423-0491

**Grantor/Taxpayer:** McQuillen Place Company, LLC, 1110 North Grand Ave., Suite 300, Charles City, IA 50616
**Grantee:** Cerro Gordo County, Courthouse, 220 N Washington Ave., Mason City, IA 50401
**Legal Description:** See attached Addendum #1.

## RESTRICTIONS AGREEMENT

FROM

McQuillen Place Company, LLC, and Iowa Limited Liability Company

TO

Cerro Gordo County

July 5, 2013
Date

## RESTRICTIONS AGREEMENT
### ((Multi-Family (Rental) Unit Production – New Construction)

THIS AGREEMENT FOR COVENANTS AND RESTRICTIONS (the "Agreement"), dated as of July 5, 2013 is between the Cerro Gordo County, (the "Lender"), and McQuillen Place Company, LLC, an Iowa Limited Liability Company (the "Grantor").

WITNESSETH:

WHEREAS, the Grantor has applied for and been approved for a forgivable Loan (defined herein) from the Lender from Program funds; and

WHEREAS, as a condition of making the Loan, the Lender requires that Grantor enter into this Agreement in order that the Grantor certify that the Grantor is eligible for assistance under the Program, and that the Grantor agrees to provide certain housing benefits for Low-and-Moderate Income Families.

NOW, THEREFORE, in consideration of the premises and for other valuable consideration the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. **DEFINITIONS**. As used in this Agreement, the following words and phrases shall have the following meanings unless the context otherwise requires:

"Affordable Rental Units" means those units contained in the mortgaged property and contained in the agreement for covenants and restrictions that are occupied by low and moderate income persons or households at any given time. Affordable rental units in the appropriate number are to be retained at all times as affordable rental units throughout the period of affordability (10 years) through income limitation of the tenants occupying those units and through income limitations of the tenants occupying those units and through rent limitations for the tenants occupying those units.

"Community Development Block Program" or "CDBG Program" means the grant program authorized under Title I of the Housing and Community Development Act of 1974, as amended.

"Disaster Event" means the federally declared disaster, which occurred between May 25 and August 13, 2008, and designated by the Federal Emergency Management Administration as FEMA-1763-DR-IA.

"IEDA" means the Iowa Economic Development Authority.

"Loan" means a forgivable loan in the amount of $2,940,000 made by the Lender to the Grantor on the date hereof and any subsequent amendments thereof.

"Low-and-Moderate Income Families" means those families earning no more than 80% of area median income as determined by the latest U.S. Department of Housing and Urban Development, Section 8 income guidelines. Unrelated individuals shall be considered as one-person families for this purpose.

"Mortgage" means the Forgivable Mortgage and Assignment of Rents dated the date hereof from the Grantor to the Lender.

"Mortgaged Property" means the property commonly known as 123 N Main St, Charles City, Iowa 50616 and legally described as affixed on attached Addendum #1.

"Note" means the Forgivable Loan Promissory Note dated the date hereof from the Grantor to the Lender.

"Owner" means the Grantor.

"Program" means the Multi-Family (Rental) Unit Production – New Construction program administered under the Community Development Block Program.

"State" means the State of Iowa

"Term of Affordability" means the period beginning when CDBG Supplemental Funds assistance has been provided, when all work has been completed and accepted and the forgivable loan and agreement for covenants and restrictions has been recorded on the date and ending on the date which is ten (10) years after the date of recording.

2. **ELIGIBLE RENTAL PROPERTY**. The Grantor certifies that the Mortgaged Property meets all of the following requirements:

(a)   The Grantor has demonstrated through its application that it has the ability to fund ongoing operational expenses for the Mortgaged Property throughout the Term of Affordability.

(b)     The Mortgaged Property is not located within a 100-year floodplain (flood zone designation B, C or X as determined by the Federal Emergency Management Administration) unless the Mortgaged property meets all HUD environmental requirements, all applicable flood mitigation standards and the Mortgaged Property is insured by insurance obtained through the National Flood Insurance Program.

(c)     The Mortgaged Property is not located in an area designated or proposed for any buy-out program administered by local, State or Federal government.

3.     **REHABILITATION REQUIREMENTS**.  The Grantor covenants that the rehabilitation of the Mortgaged Property will meet the following requirements:

(a)     The Mortgaged Property must, after project completion, meet all locally adopted and enforced building codes, standards and ordinances in the community in which the Mortgaged Property is located.

(b)     To the extent possible, the Mortgaged Property must, after project completion, meet the Iowa Green Streets criteria published by IEDA.

4.     **CONTINUED AFFORDABILITY**.  During the Term of Affordability, no less than fifty-one percent (51%) of the rental units in assisted rental project shall be occupied by persons or households whose incomes are at or below 80% of the area median income limits (LMI) by household size as established by HUD for the jurisdiction in which the rental project is located.  The Owner agrees to obtain verification of income of all tenants by obtaining income tax returns, Internal Revenue Service Form W-2's for employed tenants, Internal Revenue Service Form 1099's, and other evidence of income from each prospective occupant of such Affordable Rental Unit.

5.     **LIMITATIONS ON RENT ON AFFORDABLE RENTAL UNITS**.  During the Term of Affordability, gross rent charged by the Owner with respect to any Affordable Rental Unit shall not exceed the then most current HOME Program 65% rent limits (determined by bedroom size).  Net rent is calculated based upon the utility allowances established by the local public housing authority that has jurisdiction over the Mortgaged Property.

6.     **OTHER REQUIREMENTS**.  The Grantor certifies that the rehabilitation and administration of the Mortgaged Property will be conducted and administered in compliance with all applicable Federal and State laws, regulations, orders and notices.  Certain statutes are expressly made applicable to activities assisted under the CDBG Program, while other laws not referred to in the CDBG Program may be applicable to such activities by their own terms.  The Grantor certifies and assures compliance with the applicable orders, laws and implementing regulations, including but not limited to, the following:

(a)     Title I of the Housing and Community Development Act of 1974 as amended (42 U.S.C. 5301 et seq.); and regulations which implement these laws, as modified by the Act.

(b)     Title VI of the Civil Rights Act of 1964 as amended (Public Law 88-352; 42 U.S.C. 2000d et seq.); Title VIII of the Civil Rights Act of 1968 as amended (Public Law 90-284; 42 U.S.C. 3601 et seq.); the Iowa Civil Rights Act of 1965; Iowa Code Section 19B.7, and Executive Order #34, dated July 22, 1988; Iowa Code Chapter 216, Presidential Executive Order 11063, as amended by Executive Order 12259; Presidential Executive Order 11246, as amended; Section 504 of the Rehabilitation Act of 1973 as amended (29 U.S.C. 794); the Age Discrimination Act of 1975 as amended (42 U.S.C. 6101 et seq.); the Americans with Disabilities Act, as applicable, (P. L. 101-336, 42 U.S.C. 12101-12213); and related Civil Rights and Equal Opportunity statutes; and regulations which implement these laws.

(c)     Fair Housing Act, Public Law 90-284.  The Fair Housing Act is part of Title VIII of the Civil Rights Act of 1968 as amended (42 U.S.C. 3601 et seq.); Section 109 of the Title I of the Housing and Community Development Act of 1974, as amended; Section 3 of the Housing and Urban Development Act of 1968 as amended (12 U.S.C. 1701u); and regulations which implement these laws.

(d)     Section 102 of the Department of Housing and Urban Development Reform Act of 1989 (P.L. 101-235), and implementing regulations.

(e)     Requirements for the Notification, Evaluation, and Reduction of Lead-Based Paint Hazards in Federally Owned Residential Property and Housing Receiving Federal Assistance; Final Rule (24 CFR Part 35, et al.).

(f)     National Environmental Policy Act of 1969 and implementing regulations.

(g)     Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended, (URA)(42 U.S.C. 4601 - 4655) and implementing regulations, as limited by the Act; Section 104(d) of the Housing and Community Development Act of 1974, as amended, governing the residential anti-displacement and relocation assistance plan; and Section 105(a)(11) of the Housing and Community Development Act of 1974, as amended, governing optional relocation assistance.

(h)     Government-wide Restriction on Lobbying [Section 319 of Public Law 101-121] and implementing regulations.

(i)     Fair Labor Standards Act and implementing regulations.

(j)     Hatch Act (regarding political partisan activity and federally funded activities) and implementing regulations.

(k)     Subsection 104(l) of Title I of the Housing and Community Development Act of 1974, as amended, regarding the prohibition of the use of excessive force in nonviolent civil rights demonstrations and the enforcement of state and local laws on barring entrance to or exit from facilities subject to such demonstrations.

(l)     Drug-Free Workplace Act.

7.     **COVENANTS TO RUN WITH THE LAND.** All of the covenants herein shall run with the land described under the definition of Mortgaged Property hereto, and be binding upon the Grantor and its successors or assigns, for the Term of Affordability. Notwithstanding any other provisions of this Agreement, this entire Agreement, or any of the provisions or paragraphs hereof, may be terminated upon written agreement by the Lender and the Grantor.

8.     **EFFECT OF SUBSEQUENT EVENTS.** Notwithstanding the provisions of Section 7, such covenants shall cease to apply to the Mortgaged Property prior to the end of the Term of Affordability, in the event of involuntary noncompliance therewith caused by a fire, seizure, requisition, foreclosure, transfer of title by deed in lieu of foreclosure, change in a federal law or action of a federal agency after the date of making of the Loan which prevents the Lender or its successors or assigns from enforcing the covenants, or condemnation or similar event, but only if, within a reasonable period, amounts received by the Grantor as a consequence of such event are used to provide a project which meets the requirements of the Program.

9.     **REINSTATEMENT OF COVENANTS.** Notwithstanding the provisions of Section 8, if once the Mortgaged Property has been subject to foreclosure, transfer of title by deed in lieu of foreclosure or similar event, and at any time during the part of the Term of Affordability subsequent to such event, the Grantor or a related person to the Grantor obtains an ownership interest in the Project for tax purposes, the covenants herein shall once again run with the land described in Attachment A hereto and the Project thereon and be binding on the Grantor or such related person and their respective successors or assigns for the remainder of the Term of Affordability.

10.     **AMENDMENTS.** This Agreement may be amended only by an amendment in writing executed by the parties hereto and properly recorded in the County Recorder's office.

11.     **RESTRICTIONS ON TRANSFER.** Except for the rental of units in the Mortgaged Property to tenants, during the Term of Affordability, the Grantor hereby covenants and agrees not to sell, transfer or otherwise dispose of the Mortgaged Property or any interest therein. If, during the Term of Affordability, the Grantor sells, rents (other than the rental of units in the Mortgaged Property to tenants and other than any portion of the Mortgaged Property disposed of as a result of its deteriorating condition or obsolescence as determined in the normal course of business and which is replaced with similar property of equal or greater value) or uses the Mortgaged Property in a manner not permitted hereunder, the Grantor shall immediately pay the Lender the principal amount of the Loan plus any additional amounts advanced by the Lender under the Mortgage.

12.     **EVENTS OF DEFAULT; REMEDIES.** If the Grantor defaults in the performance or observance of any covenant, agreement or obligation of the Grantor set forth in this Agreement, and if such default remains uncured for a period of thirty (30) days after notice thereof shall have been given by the Lender to the Grantor (or for a period of sixty (60) days after such notice if such default is curable but requires acts to be done or conditions to be remedied which, by their nature, cannot be done or remedied within such 30-day period, and if the Grantor commences same within such 30-day period and thereafter diligently and continuously pursues the same to completion within such 60-day period), then the Lender may declare that the Grantor is in default hereunder and may take any one or more of the following steps, at its option:

(a)     By mandamus or other suit, action or proceeding at law or in equity, require the Grantor to perform its obligations and covenants hereunder and under the Note and the Mortgage, or enjoin any acts or things which may be unlawful or in violation of the rights of the Lender hereunder, or obtain damages caused to the Lender by any such default;

(b)     Have access to and inspect, examine and make copies of all of the books and records of the Grantor pertaining to the Mortgaged Property;

(c)     Declare that all sums due with respect to the Loan, the Note and the Mortgage are immediately due and payable; and

(d)     Take whatever other action at law or in equity may appear necessary or desirable to enforce the obligations, covenants and agreements of the Grantor hereunder and under the Note and the Mortgage.

No delay in enforcing the provisions hereof as to any breach or violation shall impair, damage or waive the right of the Lender to enforce the same or to obtain relief against or recover for the continuation or repetition of such breach or violation or any similar breach or violation thereof at any later time or times.

13.     **AMENDMENTS.** The Grantor shall cause this Agreement and all amendments and supplements hereto to be recorded and filed in such manner and in such places and the Lender may reasonably request, and shall pay all fees and charges incurred in connection therewith. The Grantor shall return the original stamped Agreement to the Lender after it has been recorded.

14.     **GOVERNING LAW.** This Agreement shall be governed by the laws of the State.

15. **NOTICES.** Any notice required to be given hereunder shall be given by registered or certified mail at the addresses specified below or at such other addresses as may be specified in writing by the parties hereto:

Lender:
   Cerro Gordo County, 220 N Washington Ave., Mason City, IA 50401

Grantor:
   McQuillen Place Company, LLC 1110 Grand Ave., Suite 300, Charles City, IA 50616

16. **SEVERABILITY.** If any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining portions shall not in any way be affected or impaired.

17. **MULTIPLE COUNTERPARTS.** This Agreement may be simultaneously executed in multiple counterparts, all of which shall constitute one and the same instrument and each of which shall be deemed to be an original.

18. **SUCCESSORS AND ASSIGNS.** All of the rights and obligations set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have caused this Restrictions Agreement to be executed by their duly authorized officers, all as of the date first above written.

**Cerro Gordo County**

By _Robert E. Amosson_

Name: Robert E. Amosson

Title: Chair, Cerro Gordo County Board of Supervisors

**STATE OF IOWA** )
                  )
**COUNTY OF CERRO GORDO** )

This instrument was acknowledged before me this 14th day of Nov , 2014 by Robert E. Amosson

_Michelle Rush_
Notary Public in and for the State of Iowa

(SEAL)

MICHELLE R RUSH
Commission Number 158744
MY COMMISSION EXPIRES
DECEMBER 6, 2014

**McQuillen Place Company, LLC**

By_____Charles M. Thomson_____

Name:_____Charles M. Thomson_____

Title:_____Managing Member_____

**STATE OF IOWA**                    )
                                     )
**COUNTY OF** FLOYD                  )

This instrument was acknowledged before me this 5th day of November, 2014, by CHARLES M. THOMSON

_____
Notary Public in and for the State of Iowa

(SEAL)

TRACEY C. LYNCH
Commission Number 725179
My Commission Expires
10-23-15

# Addendum #1

Legal Description

LOT ONE (1), BLOCK TWENTY-ONE (21), EXCEPT THE NORTHWESTERLY TWENTY-TWO FEET (NWLY 22') THEREOF, OF THE ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, OTHERWISE DESCRIBED AS:  LOT ONE (1) OF THE IRREGULAR SURVEY OF BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW A PART OF CHARLES CITY, IOWA, EXCEPT THE NORTHWESTERLY TWENTY-TWO FEET (NWLY 22') THEREOF;
AND
THE NORTH ONE-HALF (N½) OF THE WEST FORTY FEET (W 40') OF THE BRICK WALL BETWEEN LOTS ONE (1) AND TWO (2), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS A PART OF CHARLES CITY, IOWA;
AND
CHARLES CITY DISASTER REDEVELOPMENT PROJECT IOWA R-36(C) PARCEL NO. R-24 (P-10), MORE PARTICULARLY DESCRIBED AS:  THE NORTHWESTERLY 22.00 FEET OF LOT ONE (1), BLOCK TWENTY-ONE (21), ORIGINAL PLAT OF ST. CHARLES, NOW INCORPORATED AS THE CITY OF CHARLES CITY, FLOYD COUNTY, IOWA

(Locally described as 123 N. Main Street, Charles City, Iowa  50616
Parcel No. 11-01-467-005-00)

AND

Lot Two (2), Block Twenty-one (21), Original Plat of St. Charles, now incorporated as a part of Charles City, Iowa.

Lot Three of the Irregular Survey of Block Twenty-one of the Original Plat of St. Charles, now incorporated as Charles City, Iowa.

Lot 4 of the Sub-division of Lots 3 and 4 of Block 21 of the Original Plat of St. Charles, now Incorporated as Charles City, Iowa.

Lot five (5) of the Irregular Survey of Block No. Twenty-One (21) of the Original Plat of St. Charles (now incorporated as Charles City) according to the Sub-Division of said Block Twenty-One (21).

<u>ADDENDUM TO PROOF OF CLAIM</u>

THE IOWA DEPARTMENT OF REVENUE HAS NOT IDENTIFIED A RIGHT OF SETOFF OR COUNTERCLAIM. HOWEVER, THIS DETERMINATION IS BASED ON AVAILABLE DATA AND IS NOT INTENDED TO WAIVE ANY RIGHT TO SETOFF TAX REFUNDS OR OTHER DEBTS OWED BY THE STATE OF IOWA TO THE DEBTOR.  ALL RIGHTS OF SETOFF ARE PRESERVED AND MAY BE ASSERTED TO EXTENT LAWFUL.